Brown v. Hannibal & St. Joseph R. R. Co.

Brown v. Hannibal & St. Joseph R. R. Co., *Appellant.*

1. **Railroads**: DUTY OF CONDUCTOR IN EJECTING PASSENGER. If one goes upon a railroad train intending, in good faith, to become a passenger, the conductor, while he has the undoubted right to put him off if the rule of the company prohibits the carrying of passengers on that train, has no right for that reason to eject him violently, or in such a manner as to imperil his life, as by pushing or ordering him off while the train is in motion, and if he does, the company is responsible in damages for any resulting injury.

2. ————: DISEASE AS AFFECTING COMPANY'S LIABILITY FOR PERSONAL INJURIES. The liability of a railroad company for a violent ejection of a passenger from its train, is not diminished by the fact that he was at the time suffering from a disease which aggravated the injuries sustained, or rendered them more difficult of cure.

3. **Druggist** NOT A PRIVILEGED WITNESS. A drug and prescription clerk may be compelled to testify what medicines he has furnished to a party to a suit, and it is error for the court to allow his claim of privilege when interrogated as to that matter.

4. **Evidence of Character.** When a witness has testified that the character of another witness for truth and veracity is bad, it is discretionary with the trial court to admit or reject further testimony from the same witness to prove his general moral character also to be bad.

5. **Evidence**: COMPLAINTS OF PHYSICAL PAIN made by one suffering from a recent injury, are admissible in evidence on behalf of the sufferer in an action to recover damages for the injury.

6. **Practice**: The court again condemns the conduct of attorneys who

travel out of the record in addressing the jury, and make statements of fact which there is no evidence tending to prove.

7. **Testimony false in part**: PROVINCE OF THE JURY. If the jury believe that a witness has willfully sworn falsely as to any material fact, they are at liberty to disregard the whole of his evidence, as well those parts of it which may be corroborated by other evidence as those which are uncorroborated.

*Appeal from Linn Court of Common Pleas.*—HON. THOMAS WHITAKER, Judge

At the time of the ejection from defendant's train complained of in this action, a rule in force on defendant's road prohibited the carrying of passengers on extra freight trains.

*James Carr* and *H. B. Leach* for appellant.

*S. P. Huston* for respondent.

HENRY, J.—This was an action for damages which plaintiff alleged that he sustained from an injury received by him in consequence of being pushed off the platform of defendant's car, by the conductor of the train, while the train was in motion. The evidence shows that in July, 1872, the plaintiff arrived at Chillicothe, after the defendant's passenger train going east had passed that point, and being anxious to reach Brookfield, went to the depot and inquired of a telegraph operator in defendant's employment, when the next train would go east. The operator informed him that there would be no train until three o'clock next morning, when a freight train would pass going east; that without special permission from headquarters, conductors of freight trains were not permitted to receive passengers on such trains, but that if plaintiff would pay for dispatches both ways, he would telegraph Bennett, who was authorized to give permission to persons to travel on freight trains, and procure a permit for him. This was accordingly done, and Bennett gave the required permis-

sion.   It was then arranged between plaintiff and the operator, that plaintiff could go to bed at the hotel, and the operator should wake him in time for the train, known as freight train No. 12, which was named in Bennett's telegram as the train he should ride on.   The operator failed to wake plaintiff in time for him to take the regular train, No. 12, which moved off as plaintiff approached the depot. There was an extra freight just behind the regular No. 12, and then standing a short distance west of the depot, which was to follow the regular train immediately, and the operator informed plaintiff that he could go on that, as the extra and the regular, by a rule of the road, were regarded as one train, but that he would have to be ready and get on while it was moving by, as it did not stop at the depot.   The plaintiff gave the operator some of his baggage, which the operator was to hand him when he got on the train.   It came along, moving about six miles an hour; the conductor was standing on the rear platform of the car, or on the step of the platform, and plaintiff, as the train passed, got on the step and was holding to the platform railing.   The conductor told him, plaintiff says after he got on, another witness says before, that he could not ride on that train.   Plaintiff told him he had a permit. Conductor repeated his remark, and ordered plaintiff to get off—the train still moving at the same rate of speed. Plaintiff states, in his evidence, that the conductor pushed him off of the step on to the depot platform, and that he fell upon his back and was seriously hurt.   The conductor and another witness testified that plaintiff got off and was not pushed off by the conductor.   There was evidence on the part of plaintiff tending to show that prior to that occurrence he was in reasonable health and condition; on the part of the defendant that he then had syphilis; on the part of the plaintiff that the injury then received on his leg, between the knee and ankle, produced a running sore of an aggravated character, which finally involved the bone, and rendered amputation necessary; on the part of

the defense that it was a syphilitic sore, and was not caused by any injury received by him in the fall. We have not stated the evidence with a view of passing upon the question of preponderance, but in order that the instructions given and refused, may be properly understood. There was a conflict of evidence on all the material issues of fact upon which the jury have passed, and we cannot disturb the verdict, unless the court made improper rulings in the progress of the trial. The operator had no authority from the company except to transmit and receive telegrams in relation to its business, and none to give passes or permission to travel on trains.

The instructions given for the respondent are the following:

1st. Although the jury may believe that the train upon which plaintiff got, was not, under the rules of the company, allowed to carry passengers, yet, if they believe that plaintiff had a permit from Mr. Bennett to ride on No. 12, and that defendant's agent at Chillicothe directed him to get on this train, informing him that it was part of No. 12, and that his permit entitled him to ride on it, and assisted plaintiff on the train, and that after he got upon the caboose car of the train, the conductor threw or pushed him off while the train was in motion, then they are bound to find for the plaintiff.

2nd. The jury are instructed that the conductor had no right to put plaintiff off the car while the train was in motion, and if he did so, and plaintiff was injured thereby, then the defendant is liable, and the verdict must be for plaintiff.

3rd. Even should the jury believe from the evidence, that plaintiff may have had syphilis or other disease latent in his system, yet if they believe that he was unlawfully and willfully put off of a car on defendant's railroad while the train was in motion, by the servant or agent of defendant, and that he thereby received injuries which directly caused or developed pains in the small of the back and a

sore upon his right leg, then the defendant is responsible for all the ill effects which naturally and necessarily followed the injuries in the condition of health in which plaintiff was at the time, and it is no defense that the injuries may have been aggravated and rendered more difficult to cure, by reason of plaintiff's state of health, or that by reason of the latent disease, the injuries were rendered more serious to him than they would have been to a person in robust health.

4th. If the jury find for the plaintiff, they may allow: 1st. The expense incurred by plaintiff in attempting to cure himself of his injuries. 2nd. His loss of time occasioned by the injuries. 3rd. His bodily pain and suffering. 4th. The present and prospective condition of the wounded limb, resulting from the injury. And to this sum they may add such amount as they believe the circumstances justify in the way of exemplary damages or smart money, provided they believe that plaintiff was willfully and maliciously pushed or thrown off their train while in motion.

5th. If the jury believe from the evidence that the plantiff got upon the caboose attached to Tabler's train, and that after he got on he was ordered off the train by the conductor in a threatening manner, and that in attempting to get off while the train was in motion, he, without fault or negligence on his part, was thrown down and injured, then the finding should be for the plaintiff.

6th. If the jury believe from the evidence that any witness has willfully sworn falsely in regard to any material fact, they may entirely disregard the testimony of such witness, unless such testimony as to some part is supported by other witnesses, or by corroborating circumstances.

7th. In making up the verdict, the jury may take into consideration all the facts and circumstances surrounding the case, the plaintiff's condition in life, and his ability to provide for the future wants of his family, and may as-

sess his damages at any sum not exceeding ten thousand dollars.

The instructions given for the appellant were the following:

1st. The jury are instructed that the defendant has the right to prescribe by rule upon what trains passengers may be carried, and that under the rules read in evidence, passengers were not at the time of the plaintiff's alleged injury allowed to be carried upon extra freight trains, without a special permit from the general superintendent or master of transportation.

2nd. Under the permit read in evidence, the plaintiff had no right to ride upon an extra freight train, and upon no train other than freight train No. 12.

3rd. The jury are instructed that in this case the burden of proof rests upon plaintiff, to show each of the following facts: 1st. That he had a permit, from some person authorized to give the same, to ride upon the extra freight train, of which Tabler was conductor. 2nd. That he got on said train and was shoved or pushed therefrom by Tabler. 3rd. That the plaintiff was injured thereby; and unless the plaintiff has established each one of these facts by the preponderance of the evidence, the jury are bound to find for the defendant.

4th. Although the jury may believe from the evidence, that Brown had his leg amputated after the alleged accident at Chillicothe, yet, if the jury believe from the evidence, that said amputation was rendered necessary by a disease which he had, called syphilis, or pox, and not by the accident, then said Brown cannot recover in this action for the loss, time or expense caused by the pox alone.

5th. The jury will decide any fact in issue in favor of that party who has the preponderance of the evidence on his side.

The following, asked by the defendant, the court refused to give:

7th. If the jury believe from the evidence, that the

plaintiff got upon the platform, or step leading to the plat-
form of the caboose attached to an extra freight train;
that the conductor of said train ordered him off; that in
obeying said order, he stepped off backwards, tripped him-
self and fell upon the station platform ; that he would not
have fallen if he had stepped off in the direction in which
the train was running, they will find for the defendant.

The 8th was, substantially, that if plaintiff carelessly
attempted to board an extra freight train, not allowed to
carry passengers, while it was in motion, and if such care-
lessness materially contributed to any injury received by
him, he could not recover.

The 9th was to the effect that notwithstanding Burke,
the operator, told plaintiff he could ride on the extra train,
while in motion, yet unless he showed that Burke had au-
thority, from the company, to issue, and did issue to him a
permit to ride on the train, he had no right to ride thereon.

The 10th was in substance that the jury should ex-
clude from their consideration the evidence of what was
said and done by Burke, with reference to plaintiff's get-
ting on the extra train, if they found from the evidence
that he was only the agent of the company to receive and
transmit dispatches in regard to the running of trains.

The 11th. If the jury believe from the evidence that
said train was running at the rate of five or six miles per
hour when plaintiff attempted to get on the caboose at-
tached to it; that the conductor did not know that the
operator had told plaintiff that he could ride on the train,
then said conductor had a right to prevent the plaintiff
from getting on said train, or to order him off after he had
got on, and if plaintiff got hurt in obeying said order, and
defendant's agent did not contribute to said injury in any
other way than as herein stated, they will find for the de-
fendant.

A principal is civilly liable for the wrongful or negli-
gent act of his agent in the course of his employment.

1. RAILROADS: duty of conductor in ejecting passenger. This doctrine is well settled in this State, as elsewhere. *Garretzen v. Duenckel*, 50 Mo. 104; *Perkins v. M. K. & T. R. R. Co.*, 55 Mo. 202; *Snyder v. Han. & St. Jo. R. R. Co.*, 60 Mo. 413; *Brown v. Han. & St. Jo. R. R. Co.*, 50 Mo. 461; *Hicks v. Pacific R. R. Co.*, 64 Mo. 430; see also *Norris v. Litchfield*, 35 N. H. 271; *Birge v. Gardiner*, 19 Conn. 507; *Kerwhacker v. C. & C. R. R. Co.*, 3 Ohio N. S. 172. Applying this well established principle to this case, there was no error committed in the instructions given for plaintiff, numbered 1, 2 and 5. Appellant insists that the relation of passenger and carrier did not exist between plaintiff and defendant, and cites *Lillis v. The St. Louis, K. C. & N. R. R. Co.*, 64 Mo. 464. Conceding the plaintiff had no right to ride on the extra freight train, and that the relation of passenger and carrier did not exist, the marked distinction between this and the Lillis case is, that in the latter Lillis was not only not a passenger, but had no intention to become such. That is, he determined that he would ride upon the train and not pay the customary fare. The conductor, with assistance, put him off, using no more force than was necessary, and the only injury received was from the use of that necessary force to eject him from the car. Here, plaintiff had a permission from the proper authority to ride on freight train No. 12, and was told that the regular No. 12 and the extra immediately in its rear, were but one train under the rules of the company, and he could get on the latter. The evidence of the operator was not to show that plaintiff had a right to ride on the extra, but that plaintiff was acting in good faith in getting on that train. If he had no right to ride on that train, the conductor, after he got on, had the undoubted right to put him off, but certainly not to imperil plaintiff's life by putting him off while the train was running five or six miles an hour. If he had entered the car without any color of right whatever, it would have been the duty of the conductor in ejecting him to use all the precaution necessary to avoid injuring

him.   Instruction No. 7, asked by defendant and refused, declares that if, in obedience to the order of the conductor, the plaintiff stepped off the car backwards and tripped himself and fell upon the station platform, and he would not have fallen if he had stepped off in the direction in which the train was going, the jury should find against him.   The train was running six miles an hour, and the speed increasing every moment, and he had no time to measure steps or distances, and is not to be presumed thoroughly acquainted with the laws of motion and momentum, or to be held to mathematical accuracy in getting off of the train in obedience to the conductor's orders, which he was bound to obey.   The legal liability of the defendant is the same, whether the plaintiff was pushed off by the conductor while the train was moving or got off in obedience to the order of the conductor, who was not only able, but evidently determined to enforce it.   The damages might be less, but the right to recover in either case is unquestionable.   The 8th instruction was properly refused because the plaintiff was not injured in getting on, but in getting or being pushed off, after he had got on.   The 9th was properly refused, because it was not claimed that plaintiff had a right to ride on the extra in consequence of anything said to him by Burke, the operator.   The 10th was properly refused, because the jury had a right to consider what the operator said to plaintiff in regard to his getting on the extra, as affecting the question of plaintiff's good faith in boarding the train.   The 11th was properly refused, because the authorities before cited establish the proposition that whether the plaintiff had a right to get on the train or not, or thought that he had or not, yet, after he had entered, the conductor was bound to use proper precaution to avoid injuring him in ejecting plaintiff from the car.   *Brown v. M. K. & T. R. R. Co.*, 64 Mo. 536, was a case in which plaintiff refused to pay fare, and insisted upon riding upon a pass fraudulently obtained, and was put off the cars.   "No incivility was offered her, or

any want of courtesy displayed by the conductor, either in handing her off the cars or placing her back;" the conductor had a right to put her off, and did it in a proper manner. There is no analogy between that and this case.

Appellant complains of the 3rd instruction given for plaintiff, but the principle is well established by the author-

2. ———: disease as affecting company's liability for personal injuries. ities. "An assault and battery is none the less a wrong, for which the party injured is entitled to damages, because inflicted on a person enfeebled by disease, or by any other cause. The defendant could not screen himself from the legitimate consequences of his own unlawful acts by proof of the bad habits of the plaintiff." *Littlehale v. Dix*, 11 Cushing 364; *State v. Morphy*, 33 Iowa 270. See also note to this case in 11 American Reports, 125. If the injury on plaintiff's leg from the fall on the platform did not produce the sore which finally made amputation necessary, of course defendant would not be responsible for that; but whether it was a pre-existing syphilitic sore, or one produced by the injury, was a question fairly submitted to the jury. That plaintiff had had syphilis, and that a wound or injury upon his person would be more likely to result seriously than such injuries to persons not so afflicted, is a consideration that cannot avail defendant. Authorities *supra*.

Charles Green, a witness called by defendant, was a drug and prescription clerk, and declined to answer the

3. DRUGGIST not a privileged witness. following question: State what medicines you sold the plaintiff during the years 1871 and 1872, prior to July, 1872? Witness claimed that he was privileged from answering that question, and the court so ruled, and of this appellant complains. There was abundant evidence that plaintiff had syphilis; he admitted in his testimony that he had had that disease, and several physicians examined both on the part of plaintiff and defendant, had testified to having treated him for the disease. It was, at best, but circumstantial and cumulative evidence, and at all events the exclusion of the testimony

could not have prejudiced the defendant, for it is not at all probable that if the testimony had been admitted, the verdict would have been different, for the evidence that plaintiff had syphilis was abundant and conclusive.   However, the court erred in allowing the claim of privilege, and should have compelled the witness to testify.

Doc. Kelly, a witness for defendant, testified that he knew the character of plaintiff for truth and veracity, and 4. EVIDENCE OF that it was bad, and defendant then asked CHARACTER. witness if he was acquainted with the general moral character of plaintiff, and on plaintiff's objection, the court refused to let the witness answer the question.   Of this defendant complains.   If the witness had stated that he did not know the character of plaintiff for truth and veracity, then, under decisions of this court, the question would have been pertinent.   But why insist upon an answer to such a question after the witness had stated that plaintiff's character for truth was bad?   It certainly will not be insisted that proof of his general bad moral character was admissible for any other purpose, than to affect his credibility as a witness, and as the witness had directly testified that he was not worthy of credit, there was no error in the ruling of the court which materially affected the right of defendant.   If his bad moral character had been proved, it would only have been a circumstance to be considered by the jury in determining what credit the plaintiff was entitled to as a witness, and as the same witness by whom it was offered to prove his bad moral character, had already given evidence of his bad character for truth and veracity, there was no necessity or propriety in proving by that witness that his general moral character was not good.   The court might have admitted it without error, but its refusal to do so was not such error as would justify a reversal of the judgment on that ground.

Nor did the court err in admitting the evidence of Jo. Brown, of complaints of physical pain, made by plain-

5. EVIDENCE: complaints of physical pain. tiff on the morning that the accident occurred. 1 Greenleaf Evidence, Sec. 102, and cases cited in note 4, same page.

The remarks of Col. Bell, in his closing address to the jury for plaintiff, were far less objectionable that those of 6. PRACTICE. plaintiff's attorney in *Lloyd v. The H. & St. Jo. R. R. Co.*, 53 Mo., 509, and in that case the court refused to reverse the judgment. The practice of traveling out of the record in an address to a jury, and making statements of facts which there was no evidence tending to prove, has been often condemned, and in a case of gross misconduct in this regard, this court should reverse a judgment obtained by the party whose attorney should so conduct himself, and to avoid such a result, the better and safer practice is, in argument to a jury, to keep within the record and the testimony.

We have considered all the questions presented by the record, because for a palpable error of the court in giving the 6th instruction asked for by the 7. TESTIMONY FALSE IN PART: province of the jury. plaintiff, the judgment will be reversed and the cause remanded. The testimony given by the plaintiff was contradicted in several material particulars, and there was evidence tending to prove that his character for truth was bad. The defendant asked and the court gave the following instruction: "If the jury believe from the evidence that any witness has willfully sworn falsely in regard to any material matter on the trial of this cause, then the jury may disregard all the evidence of such witness." For the plaintiff the court gave the same instruction with this qualification: "Unless such as to some part, is supported by other witnesses or by corroborating circumstances." Is the jury not at liberty to disregard the testimony of one who has committed perjury in their presence, as to some fact testified to by him, because as to that or some other fact testified to by him, he is corroborated? If the corroborative evidence establish the fact, they may find the fact on the corroborative evidence, but if the cor-

roborative evidence is insufficient of itself to prove the fact, but in connection with the evidence of the false witness does prove it, is the jury bound to believe the evidence of the witness, and because corroborated, find the fact as he testifies? This is not the law; the jury may or may not believe him; that is a matter for their determination, and we hold that it is true, as a legal proposition, that if a witness has willfully sworn falsely, as to a material fact, the jury are at liberty to disregard his entire testimony, notwithstanding he may have been corroborated as to that or any other fact to which he testified. *State v. Mix*, 15 Mo. 153; *State v. Dwire*, 25 Mo. 553. The case of the *State v. Cushing*, 29 Mo. 215, is not in conflict with this doctrine. *Blanchard v. Pratt*, 37 Ill. 243, is to the contrary, but was cited by this court in *Paulette v. Brown*, 40 Mo. 60, and expressly disapproved. The authorities in other states, cited by respondent's attorneys, to the effect that although a witness has sworn falsely, yet if corroborated in any manner, the jury may give him such credit as they may think he deserves, we find no fault with; but the instruction complained of here, told the jury, substantially, to give him *credit if he was corroborated.* Respondent's attorneys are mistaken in regard to the instructions given, and in this opinion they are copied from the record. The instruction in *State v. Mix*, 15 Mo. 153, was not as faulty as this. Here, the jury are told, if corroborated at all, they cannot reject any of his evidence. There, they were told, that they might reject his testimony wherein he was not corroborated. It is not a matter of law that they shall or shall not, but that they may reject all, or a portion of the testimony of such witness. The judgment is reversed and the cause remanded. All concur.

REVERSED.