FARBER, *Appellant*, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

Division Two, May 16, 1893.

1. **Carriers**: PASSENGERS: PROTECTION. A carrier is bound to protect its passengers from violence and insults by strangers and fellow-passengers and *a fortiori* against the violence and insults of its own servants.

2. ———: ———: RAILROADS: CONSTITUTION. The provision of the state constitution (art. 12, sec. 14), that railways within this state are public highways, does not authorize one to ride on a train without payment of fare and in defiance of the regulations of the company.

3. **Railroad**: PASSENGERS AND FREIGHT: SEPARATE TRAINS. A railroad company being a carrier of freight and of passengers may use separate trains for each, and may exclude freight from one class and passengers from the other.

4. ———: TRESPASSER: BRAKEMAN: AGENCY. Any liability of a railroad company for the act of its brakeman in forcing from a freight train one who got on to steal a ride is founded on the law of agency, and not on that of common carriers.

VOL. 116—6

| | |
|---|---|
| 116 | 81 |
| 121 | 584 |
| 123 | 560 |
| 116 | 81 |
| 127 | 211 |
| 128 | 643 |
| 116 | 81 |
| 68a | 51 |
| 116 | 81 |
| 139 | 277 |
| 139 | 283 |
| 71a | 610 |
| 72a | 111 |
| 116 | 81 |
| 157 | 509 |
| 84a | 149 |
| 84a | 366 |
| 85a | 31 |
| 116 | 81 |
| 98a | 454 |
| 99a | 506 |
| e100a¹ | 70 |
| e100a² | 71 |

5. ——: ——: ——: ——. It cannot be assumed, in the absence of proof, that a brakeman on a freight train was authorized to remove a trespasser.

6. ——: ——: ——. The only duty the company owes a trespasser stealing a ride on the train is not to willfully or recklessly injure him after discovering him on the the train.

7. ——: BRAKEMAN'S DUTIES: EVIDENCE. It is not competent to prove the duties of a brakeman by the testimony of one who has only been around trains a few times when the brakemen were attending to their duties, and who testified that he had no other knowledge of their duties than what he had observed and what he had been told by railroad men they were supposed to be.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*George A. Castleman* and *D. C. Webb* for appellant.

(1) It mattered not what the relation existing between plaintiff and defendant, this willful and malicious trespass created a liability of defendant to respond for the injuries so inflicted. *Barker v. Railroad*, 98 Mo. 53; *Hallihan v. Railroad*, 71 Mo. 118. Under evidence sustaining such allegations, even a trespasser may recover. *Adams v. Railroad*, 74 Mo. 555; *Travers v. Railroad*, 63 Mo. 424; *Perkins v. Railroad*, 56 Mo. 212; 2 Shearman and Redfield on Negligence, sec. 483. As a common carrier the duties of defendant to a passenger are created by law, and do not rest upon the "consent" of the carrier. (2) The acts of the employee of a corporation "in the course of his employment" are the acts of the corporation itself. *Perkins v. Railroad*, 55 Mo.; *Goddard v. Railroad*, 10 American Law Register, 19; *Craker v. Railroad*, 36 Wis. 657. The doctrine that this court will not take judicial notice of the duties or degrees of superiority among railroad employees, laid down in *McGowan v. Railroad*, 61 Mo. 532, seems to have been overruled in *Travers v. Rail-*

*road*, 63 Mo. 423.   (3) This court will take judicial notice of what everybody knows from "common information." Second appeal of *Rine v. Railroad*, Sup. Ct. Mo.; *Leicy v. Harlin*, 135 U. S. 123.   Among other things, is the fact that a brakeman is authorized to expel one improperly on a train. *Kansas City v. Railroad*, 36 Kan. 657.   If the passenger fails to pay his fare, the conductor and "other servants" of the railway are authorized to put him off, and the *how* and *where* are prescribed by law. Revised Statutes, 1889, sec. 2581; *Perkins v. Railroad*, 55 Mo. 211.   And this, notwithstanding the ruling of this court in *Lillis v. Railroad*, 64 Mo. 475.   (4) But if the court cannot draw upon the great store-house of "what everybody knows," common information for the presumption as to the brakeman's duties, it was error for the circuit court to exclude evidence competent to supply this deficiency. (5) The defendant's road is a "public highway." As such it was open to the use of plaintiff. Constitution of Mo., art. 12, sec. 14; Revised Statutes, 1889, secs. 2630, 2631.   As such it is open to the use of every citizen, and he is not a trespasser in going thereon, unless so declared by statute, as in Revised Statutes, 1889, sec. 2611; Angell on Highways, sec. 18.   That section is the only one familiar to us in our laws declaring under what circumstances the citizen becomes a trespasser by the use of a railroad, and this case is not covered by it.

*H. S. Priest* and *H. G. Herbel* for respondent.

(1)   The court did not err in sustaining the demurrer to plaintiff's case, as plaintiff was a trespasser on defendant's train and no evidence was adduced to prove that the brakeman who is alleged to have ejected him from the train had any authority to do so. *Hyde v. Railroad*, 19 S. W. Rep. 483; *Farber v. Railroad*, 32.

Mo. App. 381; *Bess v. Railroad,* 14 S. E. Rep. 234; *Stringer v. Railroad,* 96 Mo. 300; *Snyder v. Railroad,* 60 Mo. 419; *McKeon v. Railroad,* 42 Mo. 83; *Railroad v. Anderson,* 17 S. W. Rep. 1039; *Jones v. Railroad,* 43 Mo. App. 413; *Wilburn v. Railroad,* 36 Mo. App. 207; *Marion v. Railroad,* 59 Iowa 428; s. c. 8 Am. & Eng. R'y Cases 178; *Coal Co. v. Heeman,* 86 Pa. St. 419; *Eaton v. Railroad,* 57 N. Y. 382; *Robertson v. Railroad,* 22 Barb. 91; *Williams v. Car Co.,* 33 Am. & Eng. R'y Cases 409; *Railroad v. Dean,* 92 Ind. 459; s. c. 18 Am. & Eng. R'y Cases 190. (2) There was no error in the exclusion of evidence. Greenleaf on Evidence [13 Ed.], sec. 82; *Powers v. Railroad,* 26 N. E. Rep. 446; *Rutledge v. Railroad,*19 S. W. Rep. 38; *Reagan v. Railroad,* 93 Mo. 352; *Alcorn v. Railroad,* 18 S. W. Rep. 188; *Gordy v. Railroad,* 23 Atl. Rep. 607; *Russell v. Railroad,* 47 Fed. Rep. 205.

GANTT, P. J.—This action was commenced on the thirteenth day of September, 1888, for a personal injury alleged to have been caused by the negligence of defendant June 29, 1883. To avoid the plea of the statute of limitations, it is averred that the plaintiff was a minor when he was hurt and up to the twenty-second day of August, 1888.

The following averment states the pith and substance of plaintiff's cause of action:

"Plaintiff states that on the twenty-ninth day of June, 1883, he was riding on the cars of defendant, propelled and drawn by a locomotive of defendant on the said road of defendant, and that the defendant, not regarding its duty in that behalf, did not use due care in causing the plaintiff to be conveyed over their said road, and conducted itself so carelessly and improperly in that behalf by reason of the careless default and improper conduct of the defendant by its agents, servants

and employees, in the course of their employment, in the conveyance of plaintiff, that he, the plaintiff, in the night time, while the cars were moving rapidly through the county of St. Louis, at a point between the town of Webster and the town of Kirkwood, was violently and maliciously pushed, dragged and expelled from the cars by the employees and agents of defendant and by them as aforesaid, cast on the ground, and plaintiff fell so that his right foot was in front of the wheels of the cars of defendant on which plaintiff had been riding, and said defendant ran said car over and against the foot of said plaintiff, cutting off three toes and a portion of the other toes, and a part of the bottom of the foot of plaintiff, thereby greatly bruising, lacerating, hurting and wounding said plaintiff, and whereby and by reason of the improper conduct aforesaid he became sick, sore, lame and permanently crippled etc.," to his damage in the sum of $10,000.

The answer was a general denial and contributory negligence. The circuit court sustained the demurrer to the evidence. The plaintiff assigns as errors the sustaining of the demurrer, and the exclusion of certain evidence which he offered.

With the exception of plaintiff's father and Dr. Ford, whose evidence related only to the nature and extent of the injuries, the plaintiff's own testimony is all the evidence in the case, and as the question is raised as to its sufficiency to justify the court in sending the cause to the jury, it is deemed best to incorporate it substantially in full.

Plaintiff testified that at the time of the accident he was at work for his father in a meat market. That his father was a butcher; that he, the plaintiff, was sixteen years old; that on the twenty-ninth day of June, 1883, he and another boy, named Dillon, got on a freight train of the Missouri Pacific Railway going to Kirk-

wood. It was about nine o'clock at night. The two boys intended to go to Kirkwood. They got on a stock car loaded with lumber. The car had slides and a man-hole in the top of the car, and they got in the car through this hole.

"We got into the car in a space of six or eight feet in the end of the car and sat there. We rode some ways, and we came close to Webster, and the brakeman came along, and dropped his light down there and saw us sitting there and he says: 'Where are you going?' We said, 'To Kirkwood.' He says 'come out of there,' and we came out on top of the car, and he says, 'have you got any stuff?' And I says, 'Not a cent.' He says, 'Have you got any tobacco?' And I says, 'No.' He says, 'Have you got any pistol or a knife, or anything of that kind?' And I says, 'No, sir.' Then he says, 'Walk!' I told him we would get off when the train stopped, and he says, 'The train ain't going to stop, and you get right off here.' About this time we were pass-ing the depot at Webster, and my partner and I were afraid to get off. The train was running between eight and ten miles an hour and I walked over the ladder, and the brakeman says, 'Now get down,' and I got down on the ladder, and I says, 'If the train stops I will get off,' and he says, 'No you get off anyhow.' I told my partner we had better get off, and he went to the next car to get down on the ladder too. Than the brake-man came to my ladder and stepped on my fingers with his boots, and told me to get off. I had one hand holding on the car, and he says, 'Now get off.' I was afraid to get off, I was afraid I would fall in the culvert, and I said, 'Wait until the train slacks up,' and he says, 'No you get off,' and he stepped on my fingers again with his big shoes, and I could not stand that and I had to let go and I fell alongside of the track where there was a tie stuck out just at the end of the walk, and my foot got under the

wheel of the car, and I hallooed that I was hurt.   They stopped the train, and came back, and got me, and took me to Kirkwood."

The plaintiff then testified that the train ran over his small toe, and across his foot just below the instep. It peeled off all the flesh of the foot and left nothing but the skin.   The plaintiff said that he would be twenty-three on the twenty-second of August, 1890.

Plaintiff having testified that a brakeman ejected him from the train, was asked this question by his attorney:

"Now tell the jury what the duties of a brakeman on a freight train are?

By Mr. Herbel, attorney for the defendant:   I object to that if the court please.

By the Court:   I think the objection well taken.

*Q.* By Mr. Webb:   You know what the duties of a brakeman on a freight train are?   *A.* Yes, I think I know.

By Mr. Herbel:   Wait a minute.   We want to know your source of knowledge, what your experience has been.   *A.* I was told by *either the brakeman or the fireman.*

By Mr. Herbel:   I object to his stating that, as incompetent.

*Q.* By Mr. Webb:   Are you acquainted with many employees of railroad companies?   *A.* Yes, I know several of them.

*Q.* Of the Missouri Pacific Railroad Company especially?   *A.* I know employees of the Missouri Pacific, yes, sir.

*Q.* Have you seen any of the workings of the employees—what they do and what their business is? *A.* Yes, I have seen them often enough, if you go around the railroad you can see them at any time at the levee, and at any place you can see them.

*Q.* You know what their general duties are? *A.* Yes, sir.

*Q.* Both at the levee and at the depot, and on the trains? *A.* Yes, sir.

*Q.* Now state what are the duties of a brakeman?

By Mr. Herbel: I object to that as incompetent.

By the Court: Objection sustained. To which action of the court the plaintiff then and there duly excepted at the time.

By Mr. Webb: *Q.* Have you any other means of knowing what the duties of brakemen are? *A.* Only what I have been told and what I have seen.

*Q.* What experience have you had besides seeing them about here? *A.* I have had no experience only what I have seen and what I have heard from other people.

*Q.* Who have you heard from? *A.* I have been told so by different railroad men *about these duties what they are supposed to be.*

*Q.* Have you been on trains when they were working and attending to their business? *A.* Yes, sir.

*Q.* How often? *A. Not very often; a couple times, I suppose.*

*Q.* Have you had any conversation with these railroad men while they were engrossed in business, while they were attending to their duties? *A.* Yes, I spoke to several brakemen several times when they were working; and very often I would go to the train in the yard and get on and ride to Grand avenue.

*Q.* Have you often gone from the yards on the train out to Grand avenue? *A.* Yes, sir.

*Q.* And you have associated with these men? *A.* Not associated with them. No, sir; I cannot exactly say that.

*Q.* Have you been riding on the trains with them? *A.* Yes, sir.

*Q.* Now state what you have noticed them doing?

Objected to. Objection sustained. To which action of the court the plaintiff then and there, duly excepted at the time.

*Q.* While riding on the trains with these men, and conversing with them, I will ask if you have noticed their habits and their actions while engaged in business? *A.* Yes, sir.

*A.* I have seen them put other people off.

By Mr. Herbel: I object to that.

By Mr. Webb: He was asked how he had any knowledge of the rules of the railroad company. I want to know how he knew that. It is brought out by the question of Mr. Herbel, that he knew he would be removed by the brakeman, or other employee, if he did not get off the car.

By the court: He may answer how he knows.

*A.* When I was going to school I was around the railroad yards and saw it every day, that the brakemen put men off. They put boys off, and men too, who jumped on the train. I suppose they were trying to steal a ride, and they would put them off. That is how I know it.

*Q.* That is a matter that arose from your experience, that anybody might obtain that goes around a railroad yard and sees it? *A.* Yes, sir.

*Q.* He sees brakemen remove trespassers and persons getting on the train? *A.* Yes, sir.

*Q.* It is a matter of universal knowledge of anybody who observes the workings of a railroad? *A.* Yes, sir.

*Q.* I will ask you, Mr. Farber, whether each brakeman has charge of the entire train, and what their duties are?

Objected to. Objection sustained. To which action of the court the plaintiff then and there duly excepted at the time.

This was all the evidence in chief offered by plaintiff, as to the cause of his injury, except that in answer to a question from the court he said he was hurt just above the station at Webster. The platform there is one hundred and fifty to two hundred feet long, and he was hurt at the end.

On cross-examination he testified, that it was a dark night when he got on the car; that he and his friend, Dillon, got on the car to steal a ride. He didn't pay any fare, and did not intend to. His purpose in going to Kirkwood was to get peaches and go fishing the next day. That he knew he must hide himself from the employees on the train in order to be carried on it. The car was an ordinary stock car, loaded with lumber. He climbed up the brakeman's ladder and entered through a manhole on top of the car. There was a space of eight feet square not occupied by the lumber. There were no lights on the train. He admitted that he had been arrested on various occasions for different offenses; that just prior to this trial, he was arrested at the instance of his father, because he would not give up the keys to his father's butcher shop, which was being pilfered by somebody.

I. The petition does not allege that plaintiff was a passenger on defendant's train when he was ejected. It simply avers that he was riding on the car of defendant, and that its servants in the course of their employment violently pushed him off.

The evidence conclusively shows that he was not a passenger, *either for hire or by invitation or sufferance of the servants of defendant.* He testified that he boarded the train in the night without the knowledge of the conductor or other employees on the train. It was a freight train, not designed for the transportation of passengers. Moreover, he distinctly testified that he intended to steal a ride, and purposely hid himself in a

car loaded with lumber, knowing that he would not be permitted to ride if his presence was discovered. In this respect, then, this case differs materially from those cases where the injured party was a passenger. *Flower v. Railroad*, 69 Pa. St. 210.

That relation of itself places the carrier under the obligation to carry the passenger safely and properly and treat him respectfully; and holds him responsible for the conduct of his servants, to whom he entrusts the performance of his duty. He is bound to protect his passengers from violence and insults by strangers and co-passengers, and *a fortiori* against the violence and insults of his own servants. *Goddard v. Railroad*, 57 Me. 202; *Bryant v. Rich*, 106 Mass. 180; *Craker v. Railroad*, 36 Wis. 657; *Sherley v. Billings*, 8 Bush, 147; *Railroad v. Flexman*, 103 Ill. 546. But here the defendant owed plaintiff no duty of care by reason of any special relation assumed or existing between him and the company, save that it would not willfully or recklessly injure him after discovering him on the train.

The contention of counsel for plaintiff that the defendant's railway was a public highway, and that, therefore, he was authorized to ride on its cars without its consent, and without the payment of fare, cannot be tolerated for a moment, and has been expressly repudiated by this court in *Hyde v. Railroad*, 110 Mo. 272, where it was said: "The declaration in the constitution that railways in this state are 'public highways' (Constitution, 1875, art. 12, sec. 14), in the connection in which it appears, obviously was not intended to throw them open as thoroughfares for pedestrians. Its object was to lay a foundation for certain kinds of legislative regulation of railways, but not to change the nature of the use of railroad property, or to divert it from the general purposes for which it was designed."

Nor is it in any sense a warrant to use the cars of a railway company without the payment of reasonable tolls, and in defiance of the management and regulation of the company.

In *Whitehead v. Railroad*, 99 Mo. 263, BLACK, judge, speaking for the whole court, said: "There can be no doubt but a railroad company being a carrier of freight and of passengers may use separate. trains for freight and for passengers, and may exclude freight from one, and passengers from the other." *Railroad v. Bartram*, 2 Ohio St. 459; *Dunn v. Railroad*, 58 Me. 187.

The claim of the appellant is utterly without merit, and if permitted would result in utter confusion, and destroy the efficiency of the railroads in their service as the great public carriers, both of freight and passengers.

II. It being then an uncontroverted fact that plaintiff was wrongfully, and without any lawful right whatever, on the train, the liability of the defendant to him for an injury he may have received, is not founded upon the duty and obligations imposed by the law of common carriers, but is referable to the law of agency.

It was said in *Snyder v. Railroad*, 60 Mo. 413, that "it is firmly established [in this state] that the master is civilly liable for the tortious acts of his servant, whether of omission or commission, and whether negligent, fraudulent or deceitful, *when done in the course of his employment*, even though the master did not authorize or know of such acts, or may have disapproved or forbidden them." *Garretzen v. Duenckel*, 50 Mo. 107. Indeed the doctrine of the old cases as announced in *M'Manus v. Crickett*, 1 East's Term Reports, 106, no longer obtains in the courts of this state.

The liability of the master for the acts of the servant rests now upon the condition whether or not the act of the servant was in the course of his employment. *Perkins v. Railroad*, 55 Mo. 211; *Craker v. Railroad*, 36 Wis. 657. This test must determine this case. It is assumed by plaintiff that this court should take judicial notice that it was within the line of the brakeman's employment to put trespassers off of the train from which he was expelled, and the defendant is necessarily liable for the reckless performance of this duty by the brakeman. The learned counsel cites us to no well considered case in which such a presumption is indulged. In *McGowan v. Railroad*, 61 Mo. 528, Judge HOUGH in discussing whether certain employees were fellow-servants said: "*This court cannot take judicial notice of the duties required of or performed by such servants*, nor of the degrees of supremacy or subordination existing among them." On the contrary, in Wood's Railway Law, sec. 316, it is said "the conductor of a train being in charge of it, and having full control over it for the time, represents the company as to any matter connected with its management and control, and for an act done by him in the line of his duty, as by the ejection of a trespasser from the train, etc., the company would unquestionably be liable; *but for the act of a brakeman of the train who, without the direction of the conductor*, should remove a trespasser from the train, the company would not be liable, *unless express authority to do an act* to which the act complained of is incident is shown, *because the act is not one which comes within the scope or line of his duty*." *Farber v. Railroad*, 32 Mo. App. 381; *Bess v. Railroad*, 14 S. E. Rep. 234. The authorities cited by Wood support his text. *Marion v. Railroad*, 59 Iowa, 428; *Peck v. Railroad*, 70 N. Y. 587; *Rounds v. Railroad*, 64 N. Y. 129; *Walker v. Railroad*, 23 Law Times Rep. 14.

We think that the powers and duty of the brakeman were matters of fact, to be determined by evidence, and we are not justified in taking *ex-officio* notice of their extent or character. Moreover, there is no reason for assuming, in the absence of proof, that the brakeman on a freight train has been clothed with the power to remove persons who shall endeavor to take passage on the train. It was not to be presumed that anyone would violate the law, and attempt to ride in the first place, and hence, require his services for such purpose; nor that this subordinate would be so invested when he had a superior present in person of the conductor, upon whom such duties usually devolve. *Railroad v. Anderson*, 17 S. W. Rep. 1039. Having reached this conclusion, it must be apparent that there was no evidence whatever tending to show that the brakeman was employed, either generally or specially, to remove passengers from the train.

Had he been shown to have such authority, and had he exercised it in the cruel and unjustifiable manner, charged by plaintiff, no doubt would be entertained as to the company's liability. *Brill v. Eddy*, 115 Mo. 596. But the mere fact that plaintiff was injured by the tortious act of the brakeman while he was in the employ of defendant cannot render defendant liable. The wrong perpetrated must pertain to the particular duty of the brakeman; in other words *the act must be within the scope of his employment, and this the evidence failed to show.* *Stringer v. Railroad*, 96 Mo. 299; *Sherman v. Railroad*, 72 Mo. 63–66; *Flower v. Railroad*, 69 Pa. St. 210; *Coal Co. v. Heeman*, 86 Pa. St. 418; *Marion v. Railroad*, 59 Iowa, 428.

We may add there is not the slightest evidence of any ratification of the act of the brakeman by defendant.

III. Did the trial court err in holding that the plaintiff had not sufficiently qualified himself to testify as to the duties of brakemen?

The following colloquy between plaintiff and his counsel will indicate the extent of his knowledge of the subject:

"*Q.* By Mr. Webb: Have you had any other means of knowing what the duties of a brakeman are? *A.* Only what I have been told here, and what I have seen.

"*Q.* What experience have you had besides seeing them about here? *A.* I have had no experience only what I have seen and heard from other people.

"*Q.* Whom have you heard from? *A.* I have been told so by different railroad men about these duties— *what they are supposed to be.*

"*Q.* Have you been on trains when they were working and attending to their business? *A.* Yes.

"*Q.* How often? *A. Not very often; a couple of times, I suppose.*"

Now, it is an elementary rule of evidence that "the best evidence of which the case in its nature is susceptible" must be adduced. Greenleaf on Evidence [13 Ed.], 582. It is very clear that plaintiff's experience did not entitle him to speak of the duties of a brakeman. He says he had only been on the trains a couple of times, and if we are to judge from his other evidence his time was principally occupied in hiding from the view of the employees, rather than studying the nature of their duties. What position the other railroad men occupied, *or what they knew of the brakeman's duties, was not disclosed, and was obviously hearsay.* But it is clear that this evidence on its face indicated there was better evidence.

The rules of the company, the general superintendent, who employs them and issues their orders,

and the brakemen themselves could have furnished better evidence than this hearsay of plaintiff. And it is to be observed that when he was not permitted to state his knowledge of the duties of a brakeman, plaintiff made no other offer to show that his expulsion was within the scope of the brakeman's duty. The trial court did not exclude competent evidence to prove the fact. He simply excluded the secondary or hearsay evidence offered.

This cause was tried in St. Louis, where the general offices of the defendant are situated. Very slight diligence could have secured the attendance of the superintendent or his deposition, a copy of the rules, and of brakemen employed in the same line of service. We find no error in the ruling of the court on this point. The judgment is affirmed. All of this division concur.