FARBER v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division Two, May 25, 1897.

1. Railroad: TRESPASSER ON TRAIN: LIABILITY OF ROAD. A railroad is liable to one who is stealing a ride in its freight cars when the trespasser is forced off the rapidly moving train by the brakeman stepping on his fingers as he is descending the ladder of the car, and also if he gets off in obedience to the order of the brakeman who had authority to put him off and was able to enforce his order, and an instruction that limits the road's liability to the actual use of force is erroneous.

2. ———: PRACTICE. A party will not be allowed to sit still and knowingly permit his adversary to prove a fact by an incompetent witness or incompetent testimony and object for the first time in the appellate court that it was incompetent.

3. ———: ———: INSTRUCTION. Plaintiff protests against an instruction for defendant that told the jury that if they found from the evidence that the trespasser left the car in safety in obedience to the order of the brakeman, and afterward attempted to board the train and was hurt in so doing, his father, the plaintiff, could not recover. Plaintiff's objection to the instruction is that there was no evidence whatever to sustain it. The evidence shows that the conductor testified, without objection, that after he had placed the boy in the

caboose, the boy stated, "the brakeman put him off and in trying to get on he got hurt." *Held*, that with these facts in the case, although the evidence was incompetent, the instruction was properly given.

4. ———: PRACTICE: CONCLUSIONS OF THE COURT. Where the evidence all concurs in showing that it was the duty of the brakeman to put trespassers off the road's trains, an instruction that leaves it to the jury to find that "it was not a part of the duty of the brakeman to expel trespassers from the train," is erroneous.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*Martin L. Clardy, H. S. Priest,* and *Henry G. Herbel* for appellant.

(1) The court erred in sustaining the plaintiff's motion for a new trial on the ground that the instructions given were erroneous. *Candee v. Railroad,* 31 S. W. Rep. 1032; *Miller v. Car Co.,* 31 S. W. Rep. 574; R. S. 1889, sec. 2241; Sess. Acts 1891, p. 70; *Tetherow v. Railroad,* 98 Mo. 85; *Tomlinson v. Ellison,* 104 Mo. 112; *McClanahan v. West,* 100 Mo. 322; *Green v. City,* 106 Mo. 454. (2) As to the instructions given for plaintiff, they were well enough; but, had they not been so, plaintiff could not have complained of them, because he would have been bound by his own law. Parties are concluded by the instructions they ask to be given, whether abstractly correct or not. *Jennings v. Railroad,* 99 Mo. 399. So we have only the defendant's instructions to consider on this appeal. (3) That the first of these instructions is correct goes without saying, because it is a stereotyped form which has been approved by this court in innumerable instances. (4) That the second instruction is correct ought not to admit of serious question. It simply told the jury that their finding should be confined to the issues presented

by the pleadings, viz., whether or not the plaintiff's son was forcibly ejected from the train. Surely there can be no question regarding the soundness of the statement as a legal proposition, because it is one of the elementary principles of practice that a plaintiff can recover only on the negligence charged in his petition. It was certainly in harmony with the plaintiff's instructions, which contained the condition that the jury should find "that said employee (brakeman) forced the plaintiff's son to comply with such order by stepping on his fingers on the ladder whereon the plaintiff's son was then standing," before they could return a verdict for the plaintiff, which instruction was in consonance with the allegations of the petition. If the plaintiff's son was not forcibly ejected from the train, then the plaintiff can not recover, under his own instruction. So he certainly can not complain of an instruction which required nothing more of the jury. *Harper v. Morse*, 114 Mo. 321; *Whitmore v. Lodge*, 100 Mo. 47; *Price v. Town*, 92 Mo. 387; *Keen v. Schnedler*, 92 Mo. 526; *Thorpe v. Railroad*, 89 Mo. 666; *Rilly v. Railroad*, 94 Mo. 600. (5) The third instruction contains a correct declaration of law, and is founded on the testimony of defendant's conductor, Stevens. (6) The fourth instruction was merely a repetition of the second instruction, prefaced by an unquestionable declaration of law, because the plaintiff's son admitted that he was a trespasser on defendant's train. (7) The fifth instruction has been approved by this court too often to admit of discussion. Its oppositeness to this case is obvious in view of the facts that no suit was brought on this claim until four years after the injury; that the plaintiff offered no evidence to corroborate his son's statements, or to explain the absence of his son's companion, Dillon, at the time of his injury; that his son's testimony was diametrically opposed to that of

defendant's brakeman on the vital features of this case; that he contradicted his testimony on a former trial, and made numerous inconsistent and conflicting statements regarding the purpose of his visit to Kirkwood, and was shown by his own father's testimony to have had a disreputable character. *Miller v. Car Co.*, 31 S. W. Rep. 576. (8) The sixth and last instruction given for the defendant was clearly unexceptionable. It was based on the testimony of plaintiff's witness, Mahoney, and defendant's witness, Haley, to the effect that while it was the brakeman's duty to tell trespassers to get off the train, it was not his duty to force them off the train, as plaintiff claimed his son had been forced off. The authority of this agent of defendant was one of the vital questions in this case, and it was therefore clearly proper to make it the subject of an instruction. (9) As the verdict was clearly for the right party, it should not have been disturbed, even though there may have been errors in the instructions which we deny. *Homuth v. Railroad*, 31 S. W. Rep. 906; *Orth v. Dorschlein*, 32 Mo. 366; *Ellerbe v. Bank*, 109 Mo. 445; *Kelly v. Railroad*, 88 Mo. 534; *Hoyt v. Davis*, 30 Mo. App. 309; *Nevitt v. Crow*, 29 Pac. Rep. 749.

*George A. Castleman* and *Ben T. Castleman* for respondent.

(1) It was erroneous for the trial court to give instruction number 1 for defendant, because it was based upon testimony of Willie Farber, the maimed boy, erroneously admitted in cross-examination of witness, against objection and exception of plaintiff. *State v. Parker*, 96 Mo. 382; *State v. Howard*, 102 Mo. 142; *State v. Houx*, 109 Mo. 654; *State v. Gesell*, 124 Mo. 535. (2) It was erroneous for the trial court to give instruc-

tion number 2 for defendant, because it bases plaintiff's right to recover upon the question of the use of actual force in the ejection of plaintiff's son from the moving train; whereas the basis of plaintiff's action is negligence which may exist without force, either actual or constructive. *Brown v. Railroad*, 66 Mo. 596; *Isabel v. Railroad*, 60 Mo. 480; *Hicks v. Railroad*, 64 Mo. 437; *Brill v. Eddy*, 115 Mo. 603. (3) It was erroneous for the court to give instruction number 3 for defendant, because there was no probative testimony upon which to base the condition, "and that he thereafter attempted to get upon or aboard said train, and was injured while so doing," etc. This is based upon "hearsay testimony," being an alleged declaration of Willie Farber on the caboose after injury (how long is not disclosed), as testified to by Stevens, conductor of the train. We submit that it is not shown to have been a part of *res gestae*, and must have been considered by trial court as the admission of a party to the cause, whereas Willie Farber was only a witness and in law a stranger to the case, whose declarations, not shown to be a part of the *res gestae*, have no probative force whatever, and standing alone, can not be made the basis of an instruction. Wharton on Ev., sec. 261a; *State v. Martin*, 124 Mo. 525; *State v. Punshon*, 124 Mo. 455. (4) It was error for the court to give, at defendant's instance, instruction number 4, because it denies the right of recovery by plaintiff if his son was driven from train "without being forced by said brakeman to do so." In other words, the only evidence of negligence which would sustain the case must be proof of the use by the brakeman of actual force upon the son of plaintiff.

GANTT, P. J.—This is an appeal from an order granting a new trial from a verdict in favor of defend-

ant.   The order sustaining plaintiff's motion for a new trial is as follows: "The court having fully considered the motion for a new trial * * * doth sustain the same on the grounds that there was error in the instructions given to the jury," and "doth order the judgment set aside."

This is an action by the father for injuries received by his son who, he alleges, was wrongfully expelled from one of defendant's freight trains. Save in one material respect, the facts are the same as were developed on the son's case against the defendant in 116 Mo. 81. In this case plaintiff introduced evidence tending to prove that the brakeman was authorized to expel trespassers from the train, evidence which was entirely omitted from the son's case. The facts may be summarized as follows: William Farber, a son of plaintiff, sixteen years old, and a companion, without the knowledge of defendant or its employees, climbed upon one of its freight trains at St. Louis bound west from said city. They crawled into an open hatch in the top of a car loaded with lumber and laid themselves down to rest. The testimony of the boy, William, is to the effect that his purpose was to steal a ride to Kirkwood, some twelve or fifteen miles distant; that when the train was approaching Webster, a station several miles west of St. Louis, a brakeman, who was walking over the train, put his lantern into the manhole and discovered him and his companion lying on top of the lumber in the car; that he ordered them to get out on top of the car, and, after they had done so, asked them whether they had any "stuff," and receiving a negative answer, asked them if they had a knife, pistol, razor, or anything of that kind, or tobacco; they told him "no." He then ordered them off the train, which order they refused to obey because the train was running too

rapidly; that he then forced the plaintiff's son down the ladder, and kept treading on his fingers, as he went down, until he had reached the last rung, when the pressure of the brakeman's shoe became so great that he relinquished his hold upon the ladder and fell to the ground, striking a tie, which threw his foot under the wheels, which passed over his foot, mashing it and a couple of his toes, which had to be amputated. The injured boy was the only witness who testified in plaintiff's behalf concerning the manner of the injury, the absence of his companion Dillon not being accounted for.

The brakeman's version of the accident was that while passing over the train, be saw a manhole open and lowered his lantern into it and saw the boys hiding there. He told them to get out, and then asked them where they were going. They replied "to Kansas City." He then told them that they (the train crew) were not allowed to carry passengers on freight trains, and that they would have to get off; that they then started toward the ladders, and he went on ahead to the engine, paying no further attention to the boys; that he. did not hear of the injury to plaintiff's son until the train arrived at Kirkwood, Missouri, the next station, when he was told thereof by his associates. He denied forcing plaintiff's son off the train.

Edward Mahoney, who was a brakeman on defendant's freight trains at the time plaintiff's son was put off, testified as to a brakeman's duties as follows:

"*Q.* State them as shortly as you can. *A.* His business is to couple and uncouple cars, to open and close switches, to see that his train before leaving here is attached, to see that his red lights and lantern are cleaned and several more things, it would take a long time to explain.

"*The Court:*  Go on and give the whole details.

"*The Witness:*  Also to see that no tramps, stragglers or people that had no business there get on the cars as they pass through or stop.

"*Q.*  A little louder.  *A.*  His duties are to prevent tramps, stragglers or people who have no business there from getting on those trains while he is on duty in actual service between here and his destination.

"*Q.*  Has he any duty with regard to trespassers whom he finds on the trains?  *A.*  He has.

"*Q.*  Do you know what those duties were?  *A.* In case that he finds any of those people on the train, he has to put them off of the train."

The instructions given the jury are as follows:

"1.  If you find from the evidence that the son of plaintiff, on June 29, 1883, was on the train of defendant as a trespasser, and that an employee of the defendant, engaged at the time in the control and running of the train, and in the course of his employment, ordered plaintiff's son to get off the train, in the dark, and while it was in such rapid motion that it was unsafe and dangerous to get off the train so moving; and that thereupon said employee forced plaintiff's son to comply with such order, by stepping on his fingers on the ladder whereon the plaintiff's son was then standing, and that in so doing said employee failed to exercise ordinary care to put off said son of plaintiff in a place and a manner safe to life and limb (regard being had to all the facts and circumstances shown by the evidence), then your verdict should be for the plaintiff.

"2.  If the jury find for the plaintiff, they will assess his damages at such sum as will be a reasonable compensation for the expenses incurred by the plaintiff in medicines and medical attention to his said son by reason of said injury, and for the loss of the services of said son during such time, between the date of the

injury and the majority of the son, as he was deprived of said services by reason of said injury. If, on the other hand, you find for the defendant, your verdict need merely so state in those words.

"3.    What constitutes 'ordinary care' as mentioned in these instructions depends on the facts of each particular case. It is such as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and circumstances as those of the person or persons in this case, with reference to whom the term 'ordinary care' is used in these instructions."

The court of its own motion gave the following:

"1.    The burden of proof is on the plaintiff to establish by a preponderance of the evidence the facts necessary to a verdict in his favor under these instructions, except upon the issue concerning the exercise of ordinary care by the plaintiff. As to that issue, the burden of proof is on the defendant to show the want of such ordinary care on the plaintiff's part.

"2.    By the 'burden of proof' and the 'preponderance of evidence,' the court means merely to briefly express the rule of law, which is that, unless the evidence before you, in regard to the facts necessary (under these instructions) to a verdict in favor of plaintiff, appears in your judgment more credible than the contrary evidence regarding said facts or that the evidence of the facts mentioned in these instructions as constituting a defense to plaintiff's said claim, then your verdict should be for the defendant."

Defendant's instructions given:

"1.    The court instructs the jury that they are the sole judges of the credit to be given the witnesses, and of the weight and value to be put upon their testimony, and in determining such credit, weight and value, you will take into consideration the character of the witness,

his manner on the stand, his interest in the result of the suit, if any, and the probability or improbability of his statements, his opportunities for obtaining information or knowledge of the matters testified to, as well as all the facts and circumstances in evidence.

"2. The court instructs the jury that plaintiff's son, William, was a trespasser on defendant's train at the time he was injured; and if they believe from the evidence that said William got off said train at the request or direction of a brakeman connected therewith, without being forced to do so, and was injured by so doing, your verdict will be for the defendant.

"3. The court instructs the jury that if they believe from the evidence that plaintiff's son, William, got off the defendant's train near Webster at the request or direction of a brakeman connected therewith, in safety, and that he thereafter attempted to get upon or aboard said train, and was injured while so doing, plaintiff is not entitled to recover in this action, and your verdict will be for the defendant.

"4. The court instructs the jury that if they believe from the evidence that plaintiff's son, William, was wrongfully on the freight train of defendant, that is, that he was riding on said freight train without the knowledge or consent of any employee of defendant connected therewith, and without the payment of any fare, then the court declares the law to be that he was a trespasser thereon, and had no right to be thereon, and the defendant owed him no duty as a passenger; and if the jury further find from the evidence that plaintiff's son, William, was discovered on said train by a brakeman connected therewith, and by him told to get off the train, and that he did so, without being forced by said brakeman to do so, and that in getting off said train he was injured, then defendant is not

liable for said injury, and you will find your verdict for the defendant.

"5. The court instructs the jury that if they believe from the evidence that any witness has knowingly and willfully testified falsely to any material fact in this case, then the jury may disregard the whole of the testimony of such witness.

"6. The court instructs the jury that if they believe from the evidence that plaintiff's son, William, was on defendant's train without the knowledge or consent of any of its employees connected therewith, and that while on said train a brakeman of defendant, connected with said train violently or forcibly expelled plaintiff's said son therefrom, on his own motion, while said train was moving, and that it was not a part of the duty of said brakeman to expel trespassers from said train, then plaintiff can not recover in this action, and your verdict will be for the defendant."

The jury returned a verdict for the defendant.

I.    The defendant insists that there was no error in the instructions which the court gave at its request, but the plaintiff asserts that instructions 2, 3, 4 and 6 for defendant were erroneous and that the circuit court properly awarded a new trial.

Of these in their order.

Instruction number 2 for defendant, it will be observed, directed a verdict for defendant if the jury should find that young Farber "got off of said train at the request or direction of a brakeman connected therewith without being forced to do so." It is obvious that the defendant's theory of the case was that unless said Farber was forced off of the train by the brakeman stepping on his fingers until he compelled him to loose his hold upon the ladder and thus compelled him to fall, defendant was not liable. The learned counsel for defendant defends this instruction because he main-

tains that this was also plaintiff's theory, as indicated by his first instruction.    There is room for this conten-tion in plaintiff's instruction, if a part only be read, but when construed as a whole it required the jury if they found "that said employee (to wit, the brakeman Haley) failed to exercise ordinary care to put off said son of plaintiff *in a place and a manner* safe to life and limb (regard being had to all the facts and circum-stances shown by the evidence) to find for plaintiff." Taking this instruction of plaintiff as a whole, though somewhat misleading and involved, the jury were au-thorized to find for plaintiff if they found that the brakeman negligently required said Farber to alight from the train while in motion and said Farber was injured while obeying said order of the brakeman not-withstanding the brakeman might not have stepped on his fingers to force him off.    Certainly, under the facts of the case, this was the law.    The liability of the de-fendant was the same whether the boy was forced off the train by the brakeman stepping on his fingers while the train was moving or obeyed the brakeman, who had authority to put him off and was able to enforce his order.    *Brown v. Railroad,* 66 Mo. 588, *loc. cit.* 596. We think the court was endeavoring to so declare the law for plaintiff and it follows that the second instruc-tion for defendant, which limited the right of recovery to the actual forcing the boy off the train, was clearly erroneous.    It is settled law in this State that a prin-cipal is civilly liable for the wrongful *or negligent* act of his agent within the scope of his employment. *Gar-retzen v. Duenckel,* 50 Mo. 104; *Perkins v. Railroad,* 55 Mo. 201; *Brown v. Railroad,* 66 Mo. 588; *Farber v. Railroad,* 116 Mo. 81.

II.    The plaintiff defends the action of the court in granting the new trial for the further reason that the court erred in giving the third instruction for defend-

ant.  Reference to the statement will show that the court instructed the jury that if plaintiff's son left the train in safety in obedience to the order of the brakeman, and afterward attempted to board the train and was hurt in so doing he could not recover.   Plaintiff maintains there was no evidence whatever to sustain this instruction.   On this point the record discloses that after the plaintiff's son was hurt, the conductor heard his cries and stopped the train and put plaintiff's son on his caboose and took him to Kirkwood.   The conductor testified that after he had placed the boy in the caboose he asked him how he came to be injured and he answered "that the brakeman had put him off and in trying to get on he got hurt."   No objection whatever was interposed to this statement but in this court it is insisted that it was wholly incompetent; that it was no part of the *res gestae* and not an admission by a party to the cause.   We think it is clear that it was not part of the *res gestae*, and was not competent against plaintiff, the father, whose cause of action was not derived through the son but existed in his own right for the damage sustained directly by himself from the loss of his son's services and the expenses he was put to in caring for him during his sickness and a reasonable physician's bill.   But notwithstanding it was incompetent and would have been excluded had a reasonable objection been interposed, does it follow that it had no probative force whatever?   We think not.   A party will not be allowed to sit still and knowingly permit his adversary to prove a fact by an incompetent witness or incompetent testimony and object for the first time in this court that it was incompetent.   *Margrave v. Ausmuss*, 51 Mo. 561; *Russell v. Glasser*, 93 Mo. 353.   Notwithstanding its incompetency, it stands as valid, subject to the right of court or jury to weigh its credibility.   It can not be said, however, as a matter

of law, to have no probate effect.  *Wendover v. Baker*, 121 Mo. 273; *State v. Martin*, 124 Mo. 514–530; *Carney v. Carney*, 95 Mo. 358; 1 Greenleaf's Ev. [15 Ed.], sec. 421; 1 Phil. Ev. 154, note 3.  It is manifest that with this evidence in the case there was no error in giving the third instruction.

III.   The fourth instruction given for defendant is erroneous in that it restricts plaintiff's right to recover upon the exercise by the brakeman of actual force in ejecting plaintiff's son from the train.   Notwithstanding the boy was a trespasser and the brakeman had authority to expel him from the train, both the law and common humanity required the expulsion to be done with ordinary care so as not to endanger his life or limbs.   As already said, the instruction applied to the facts of this case goes too far.   By it the jury might well understand that though the brakeman ordered the boy to jump from a moving train in the nighttime, no cause of action would arise to him or his father if he was crippled or killed, provided the brakeman did not touch him with his hands or actually tread upon his fingers as he held to the ladder and thus force him off.   The right to expel, and the present power to enforce his order, was a sufficient force if exercised unreasonably as when the train was running too fast for the boy to alight safely.

IV.   The sixth instruction was erroneous in that it leaves to the jury to find that "it was not a part of the duty of said brakeman to expel trespassers from the train."   In view of the evidence of the brakeman himself and of the witnesses who had worked for defendant in that capacity at the time of this injury to the effect that it was the brakeman's duty to put them off, we think there was no evidence from which the jury could have found that the brakeman had no duty

to put the boys off of the train, and it was error to invite them to so find.

The circuit court having concluded that it erred in its instructions very properly awarded a new trial.

With the merit or want of merit in the case we are not now concerned. The circuit court did not err in granting a new trial and its judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.