WILLIAM A. HURT, Respondent, v. HENRY G. ADAMS, Appellant.

**Kansas City Court of Appeals, December 3, 1900.**

1. **Easements: RIGHT OF WAY: PRESCRIPTION.** A right of way by prescription may be established by use with claim of right to the knowledge of the owner or by a use so open and notorious that knowledge of the claim will be presumed.

2. ———: ———: ———: **LICENSE.** If the use of a way be permissive only, no right to use it can be conferred by use continued for any length of time, since an adverse right of easement can never grow out of a permissive use.

3. ———: ———: **LICENSE: ADVERSE USE.** To transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the owner and such assertion must be brought home to him.

4. ———: ———: **EVIDENCE.** Evidence considered and held to show no adverse user.

5. **Trespass: RIGHT OF WAY: POSSESSION.** One having the legal title to a strip of land over which another claims a right of way has constructive possession and may maintain trespass against the other for wrongful entry and tearing away of the fence.

Appeal from the Cooper Circuit Court.—*Hon. D. W. Shackleford,* Judge.

AFFIRMED.

*Hayden, Draffen* and *William S. Shirk* for appellant.

(1) It was the peculiar province of the jury to determine, under proper instructions from the court, whether the evi-

dence established a mere license to use the lane in question, or an adverse user, under claim of right for ten years or more, continuously and uninterruptedly, etc., thus establishing an easement in the servient estate over which the way ran. There was abundant evidence at least tending to establish or create an easement by prescription or limitation.   The court usurped the province of the jury.   Bender v. Railway, 137 Mo. 240; Franke v. City of St. Louis, 110 Mo. 516 on 525; Myers v. City of Kansas, 108 Mo. 480.   (2) There was not a syllable of proof to support the instruction, that the evidence established a mere license.   The plaintiff, in his own evidence, admits that Edson used the lane for about seventeen years, and admits that Edson, while so using it, compelled him to remove some posts he had put within the lines of the lane.   This of itself established the fact, that Edson was claiming the lane as his own under claim of right.   And all the other evidence tends to show the same thing.   Under such a state of facts, it devolved upon the plaintiff to show that the use of the easement was under some license.   Washb. on Easements (3 Ed.), p. 138; O'Daniel v. O'Daniel, 88 Ky. 185; Cox v. Forest, 60 Md. 74; Hammond v. Zehner, 21 N. Y. 118; Flora v. Carbeau, 38 N. Y. 111; Colburn v. Marsh, 68 Hun. 269; Steffy v. Carpenter, 37 Pa. St. 41; Pierce v. Cloud, 42 Pa. St. 496; Rogerson v. Shephard, 33 W. Va. 307.   (3) Even if the right-of-way had originated by license, yet the evidence shows, that Givens, and the Edsons and the defendant, for over thirty years, expended money and labor in keeping bridges in repair, and in working the road, and plaintiff saw this going on for fifteen or twenty years, before he bought the Gibson farm.   Hence he was and is forever estopped to rescind any such license, even if there had been one.   House v. Montgomery, 19 Mo. App. 170, on 175, and cases cited.   (4) The use of the way, for three times

the statutory period, was with the knowledge of the owners of the servient estate, and hence adverse. Pavey v. Vance, 46 N. E. Rep. 898; Colburn v. Marsh, 68 Hun. 269; Washb. on Easement (3 Ed.), p. 137. (5) And this user was contrary to the interest of all the owners of the servient estate, and hence adverse. Washb. on Easements (3 Ed.), p. 133; Arnold v. Stevens, 24 Pick. 106. (6) And it may be well to notice the fact, that neither before or at the time this action was brought, nor at the time either act of trespass is alleged to have been committed, was the plaintiff in the actual possession of the lane in dispute. The gist of the action of trespass is to the possession, and the party seeking to maintain the action must be in the actual and lawful possession. Cochran v. Whitesides, 34 Mo. 417; Brown v. Carter, 52 Mo. 46; More v. Perry, 61 Mo. 174; Pope v. Cordell, 47 Mo. 251; Masterson v. Railway, 5 Mo. App. 575; Lindenbower v. Bentley, 86 Mo. 515; Zeitinger v. Hackworth, 117 Mo. 505.

*John Cosgrove* and *James W. Cosgrove* for respondent.

(1) Under the circumstances of this case, the length of time the strip of land in controversy was used by defendant, and those under whom he claims, is immaterial. Jones on Easements, sec. 282. If the user was by permission of the owner of the fee of the 102 acres, it was a license subject to revocation at any time. Nelson v. Nelson, 41 Mo. App. 130; Pitzman v. Boyce, 111 Mo. 387; Davis v. Callahan, 66 Mo. App. 177; Wheeler v. Stock Yards and T. Co., 66 Mo. App. 260; Dunham v. Joyce, 129 Mo. 5. (2) Permission to use the strip of land as a roadway to and from defendant's farm was by parol license of the several owners of plaintiff's land to the respective owners of the land now owned by defendant. This parol permission was never changed into a claim hostile

and adverse, nor was notice of the alleged change in the character of the claim of defendant or his grantors ever given or conveyed to any owner of the fee, until October, 1898. Prior to which time the user of defendant and his grantors was friendly, and not adverse. Before there could have been an adverse user "there must have been a distinct and positive assertion of a right hostile to the owner." Vaughan v. Rupple, 69 Mo. App. 586; Pitzman v. Boyce, 111 Mo. 387; Budd v. Collins, 69 Mo. 129; Fulkerson v. Brownlee, 69 Mo. 371; Estes v. Long, 71 Mo. 609; Comstock v. Eastwood, 108 Mo. 48. (3) The burden of showing that the claim was adverse to the owner of the fee, and that knowledge thereof was brought home to him, was upon defendant. Wilkerson v. Thompson, 82 Mo. 317. (4) A private way can only be *acquired by estoppel in pais,* by grant, or condemnation under the statute. Coberly v. Butler, 63 Mo. App. 556. This was not a way of necessity; another way was offered defendant. Cox v. Tipton, 18 Mo. App. 450. (5) Plaintiff could maintain trespass. He was in the actual, as well as the constructive, possession of the strip of land. Defendant asserted no possession except the right to pass over it. Brown v. Hartzell, 87 Mo. 568; Renshaw v. Lloyd, 50 Mo. 368; Crenshaw v. Ullman, 113 Mo. 641. (6) The trial court committed no error in directing the jury to find for the plaintiff. The evidence on the question of user was all one way. There was no conflict. Bank v. Hainline, 67 Mo. App. 483; Sash & Door Co. v. Gitchel, 69 Mo. App. 115; Clemens v. Knox, 31 Mo. App. 185.

GILL, J.—Plaintiff sued the defendant in trespass for having wrongfully entered upon his land and torn away certain gates, etc. Two separate trespasses were complained of—one in December, 1898, and the other in January, 1899.

Defendant admitted the acts charged, but justified on the ground that they were committed on a strip of ground over which he owned a right of way. The controversy grows out of a dispute between the parties as to defendant's right to a private passway over plaintiff's land. The following plat furnished by defendant's counsel will explain the situation:

Gibson formerly owned the above tract of 102 acres and which includes the lane 20 feet wide from "a" to "d." South

of Gibson, one Givens had a farm, and the latter habitually passed, by consent of the former, over and across the west end of the 102 acres to the Boonville and Rocheport public road. This permission and use began more than thirty years before the present controversy. At first there was no fencing along this private way, but later on fences were constructed by Gibson on the east and by Hurt on the west of the twenty foot strip. At different times subsequently gates were constructed—sometimes at "a" where the private way entered onto the public road, at other times at "d" where it entered into the Given farm, and occasionally there was a gate at each end of the lane.

About two years before this suit was brought plaintiff Hurt purchased the Gibson farm and took a deed for the entire tract including the twenty foot strip. About the same time defendant through successive prior conveyances became the owner of the Givens farm. In the fall and winter of 1898-99 the plaintiff put in a gate across the mouth of the lane at "a," intending thereby to let his stock pass at will from his premises on the west of the lane to his pasture on the east. It was then that defendant objected to this obstruction and tore away the gate, and this forms the basis of the first cause of action. After this, plaintiff put a lock and chain on the gate at the south end of the lane at "d," and attempted thereby to shut out the defendant from passing over his land—having previously served defendant with a written notice to the effect that he (plaintiff) revoked the license of defendant to travel over the land and at the same time offered him another way along the east side of the old Gibson farm then owned by plaintiff. Defendant, however, rejected this proposition, destroyed the gate fastenings and again opened up the lane for his own use. This serves the basis of the second count in the petition.

In his answer defendant set up at length an original right of way in Givens, his remote grantor; that the strip had been used continuously and without interruption as such private easement by the several owners for more than twenty years, and especially pleaded the ten years' statute of limitation.

At the conclusion of the evidence the court in effect declared that the defendant had merely a license to pass over the strip of land; that plaintiff as the admitted owner of the fee, had the right at any time to revoke said license, and that the jury should find for the plaintiff. From a verdict and judgment in accordance with said instruction defendant appealed.

Analogous to acuqiring title to land by adverse possession, a right of way may be acquired by prescription. In Jones on Easements (section 266) it is said that "a right of way by prescription may be established in either of two different ways: (1) By use with knowledge on the part of the owner whose land is used, that the person using his land claims the right to use it; (2) by a use so open and notorious that knowledge of a claim of right will be presumed. Evidence disproving actual knowledge of any claim of right compels the claimant to rely upon a use of the land so visible, open and notorious that the law would presume a knowledge of his claim to use it as a matter of right."

The same author (section 282) says further: "If the use of a way over one's land be shown to be permissive only, no right to use it is conferred, though the use may have continued for a century, or any length of time. A different doctrine would have a tendency to destroy all neighborhood accommodation in the way of travel; for if it were once understood that a man, by allowing his neighbors to pass through his farm without objection over the passway which he used

himself, would thereby, after the lapse of twenty or thirty years, confer a right on him to require the passway to be kept open for his benefit or enjoyment, a prohibition against all such travel would immediately ensue.   *   *   *   The use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege revokable at the pleasure of the owner of the soil." And further (section 283): "A right of way may be acquired by prescription although the use began under a mere license or verbal consent, provided the other requisites of a prescriptive right exists; that is, the user must have been exercised under a claim of right for the full prescriptive period with the knowledge and acquiescence of the owner of the servient estate, under circumstances showing the use to be adverse."

A careful reading of the evidence set out in this record clearly discloses that the use of this passway was, until shortly before this suit was brought, merely permissive and not adverse. The testimony as well as all the circumstances clearly indicate this and nothing more. There was nothing in fact in the conduct or declarations of the parties that even tended to establish the theory that the parties under whom defendant claims ever intended to assert a vested right in the use of the strip in controversy. It must be conceded that in the beginning, when defendant's remote grantors began the use of this passway, it was merely by a parol license and not under any claim of right. The language then of the supreme court in Pitzman v. Boyce, 111 Mo. loc. cit. 392, becomes pertinent: "If permissive in its inception, then such permissive character being stamped on the use at the outset, will continue of the same nature and no adverse user can arise until a *distinct and positive assertion of a right hostile to the owner, and brought home to him,* can transform a subordinate

and friendly holding into one of an opposite nature, and exclusive and independent in its character." See, also. Budd v. Collins, 69 Mo. 129, 139; Estes v. Long, 71 Mo. 606; Wilkerson v. Thompson, 82 Mo. 317-330; Nelson v. Nelson, 41 Mo. App. 130; Vaughan v. Rupple, 69 Mo. App. 583, 587. In the Nelson case, this court, speaking through Judge Smith, used this language: "An adverse right of easement can never grow out of a mere permissive use. It is otherwise, however, when the licensee has renounced the authority under which he began the use, and has claimed it as of his own right, so that the knowledge of such renunciation and claim was brought home to the licensor or owner of the servient estate, and that thereafter the licensee continued the use under such adverse claim exclusively, continuously and uninterruptedly for ten years."

We think there was no fact or circumstance testified to which tended even to prove that the defendant, or any of his prior grantors, ever intended to hold and use the strip adversely to the owner of the Gibson farm. It was a clear holding and use subject to the will of said owner. The incident most relied upon by defendant's counsel is that during the existence of the lane the owner of the Givens farm objected to the manner in which Hurt was then re-setting the wire fence along the west side of the lane. It was then objected that Hurt was intruding on the Gibson land, and therefore narrowing the lane, by setting the fence about a foot east of the line. And on a survey of the line between Hurt and Gibson it was found that the former was in the wrong and he set the fence back further west.

There was nothing in this circumstance tending to prove that the then owner of the Givens land regarded or claimed the title to this strip over which he was passing by the consent of Gibson. The force of said objection was that Hurt

Vol 86 app—6

was invading the land of Gibson and thereby disturbing the occupant of the Givens land in the exercise of his permissive right of way. In this connection it must be remembered that at that time Hurt's land only extended east to the west side of the lane in question. This will appear by reference to the plat included in the statement. Hurt had not at that time acquired title to the Givens farm.

But even if it be conceded that this conduct of the occupant of the Givens tract amounted to a hostile assertion of title to the right of way, yet it occurred less than ten years before this suit was brought and would not therefore effect a bar of adverse use.

The further objection that plaintiff can not maintain trespass because he was not in the actual possession of the strip over which the defendant claimed a right of way, is not well taken. It is conceded that plaintiff had the legal title to the strip. If so, then he had constructive possession which is sufficient in the absence of actual possession by the defendant. Defendant had no such possession as ousted the plaintiff of his constructive possession, the defendant only claimed a right of travel over land in plaintiff's possession. The authorities sustain the plaintiff's right to maintain this action. Brown v. Hartzell, 87 Mo. 564, and cases cited; Crenshaw v. Ullman, 113 Mo. 633.

The judgment of the circuit court will be affirmed. All concur.