## EAMES, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, December 1, 1908.

1. **INSURANCE: Evidence: Agency.** Where an insured wrote a letter to the vice-president of the insurance company which had issued his policy, requesting certain information, and the letter was answered by the acting cashier in a branch office, the letter was admissible in evidence as the statement of the vice-president.

2. ———: ———: **Payment of Premium.** Where a letter from the proper official of an insurance company to an insured stated that the policy held by the latter would be automatically carried as extended insurance to a certain date in the future, and where such extension would not operate unless a premium had been paid at a given date prior thereto, the letter was evidence tending to show such premium was paid and was admissible for that purpose.

3. ———: ———: **Records of Company.** In an action on an insurance policy where the issue was whether a certain premium had been paid and the defendant introduced evidence to show that there was no record of such payment according to the books kept in the office of the company, it was competent to show by a stenographer formerly employed by the company that at the time the alleged premium was due a different system of books was kept and such books were before the cashier at the time of writing a letter to the insured which tended to show that the premium was paid.

4. ———: ———: ———: **Waiver.** And in such case it was not error to refuse to permit a witness to show why full records were not kept when he had not been in charge of the office where the records were kept until long after the time when such records were made, and where the only issue was one of fact as to whether a certain premium had been paid, the question of the power of an officer of the company to waive payments was not invoked.

Appeal from St. Louis Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

AFFIRMED.

*Judson & Green* for appellant.

*W. B.* and *Ford W. Thompson* for respondent.

(1)    We admit that the proposition of law ad-
vanced in support of the first assignment of error of
appellant is correct, but deny that it has any applica-
tion to the facts in this case, for the reason that de-
fendant has expressly admitted that the letter of Feb-
ruary 1, 1899, written by its agent, Thompson, was
"an answer" to Eames' letter to the vice-president of
the defendant, hence has admitted that he was author-
ized to make the answer—the very authority which
the policy provides that an agent must have—in point
of fact, as the letter itself states.    Thompson v. In-
surance Co., 169 Mo. 24.    (2)    The letter of Eames,
written to Perkins, vice-president of defendant com-
pany, of itself, had it remained unanswered, would
have created, by reason of silence alone under the
circumstances of the case, evidence of an admission
of the truth of Eames' contention that if he made no
more payments his policy would endure until November
7, 1908, and his other policy until November 21, 1901.
Encyclopedia of Law, vol. 16, p. 956.    And this, though
Eames' letter had remained unanswered.    (3)    Admis-
sions in the law of evidence have been defined as being
concessions, or voluntary acknowledgments, made by
a party of the existence of certain facts, and have been
said to be "direct" or "express," "implied" or "indi-
rect," or "incidental."    Incidental admissions are those
made in some other connection, or involved in the ad-
mission of some other fact.    Bouvier, Law Dictionary;
Encyclopedia of Law and Procedure, vol. 16, p. 938.
(4)    The letter of Thompson, taken in connection with
that of Eames to Perkins (to which it is admitted to
be an answer), contains an "incidental admission," to
this effect:    You have made enough payments, if you
discontinue at this date (the date is January 16, 1899),

to keep your policy in force for nine years and eleven months from December 7, 1898, because your premiums are all paid up to December 7, 1898. Therefore, the one due December 7, 1897, must have been paid. Sugg v. Equitable Life Assurance Society, 94 S. W. 936.

GOODE, J.—A policy of insurance was issued December 19, 1894, on the life of Charles B. Eames, respondent's husband, and payable to her at his death. The amount of insurance was one thousand dollars written for an annual premium of $53.60, falling due December 7th of each year. The insured died December 17, 1905, and this action was instituted to recover the insurance money. Only one issue of fact was joined in the case, i. e., whether the premium which fell due December 7, 1897, was paid when it matured. If it was, it is conceded the policy was in force as extended insurance when Mr. Eames died. If it was not, then the policy had lapsed for non-payment prior to the death of the insured and respondent would not be entitled to recover. It is contended for appellant the evidence adduced to prove payment of the premium was insufficient, and respondent should have been nonsuited; and it is also contended the court erred in ruling on the evidence offered, pro and con, on the issue. The first evidence introduced on the issue by respondent was the following letter written by the deceased to the vice-president of appellant company, under date of January 16, 1899:

"January 16, 1899.

"George W. Perkins, Esq.,

"Vice-President New York Life Insurance Company, New York City.

"Dear Sir:—Your letter of December 6th was duly received and in reply would advise that I have concluded to discontinue payments under my policies numbers 652098 and 698308 in the New York Life Ins. Co.,

and will allow them to continue in force for their full amounts as provided in the policies. I understand that policy number 652098 will continue in force for one thousand dollars to November 7, 1908; and policy number 698308 will continue in force for two thousand dollars until November 21st, 1901."

It was admitted the paper offered was a carbon copy of the signed original which had been sent by the deceased to Vice-president Perkins, but appellant excepted to its admission for the reason it had no tendency to prove the premium in dispute was paid. Over the exception of appellant the following letter was admitted, written by A. E. Thompson, acting cashier for appellant company in St. Louis, under date of February 1, 1899, and purporting to be in response to the first letter:

"Feb. 1, 1899.

"Mr. Charles B. Eames,

"Odd Fellows' Building, City.

"Dear Sir:—Your letter of the 16th inst. relative to policies number 652098 and 698308 was received by this Company direct. Policy 652098 was issued December, 1894, and 698308 was issued in October, 1898, respectively. If the policies are not returned for indorsement of full paid up value of reduced amount within the time stipulated, they will be automatically carried as term extended insurance for one thousand dollars for nine years and eleven months from December 7th, 1898, in the case of policy, 652098, and for two thousand dollars for three years and one month from October 1st, 1898, in case of policy 698308. It will be necessary to return the policies if you desire them indorsed for extended insurance or paid up insurance. Please advise me on receipt by letter, and oblige,

"Yours truly,

"A. E. THOMPSON,

"Acting Cashier."

One instruction requested by appellant and refused was, that Thompson, the acting cashier of the St. Louis office, whose letter of February 1, 1899, to the insured, was read in evidence, had no power to waive payment of the premium due December, 1897, or to set aside a default or lapse for non-payment, and said letter should be considered only as bearing on the question of whether the premium was paid on December 20, 1897.

1.   Appellant has not briefed its exception to the admission of the letter written by deceased to its vice-president but insists on the exception to admitting the letter in response, written by Thompson as acting cashier and sent from the St. Louis office.   The objection to this letter is twofold: first, that the statement of an agent unless made while acting within the scope of his agency will not bind his principal as an admission; and, second, the policy in suit expressly declared in one paragraph that no agent had power to make or modify the contract of insurance, extend the time for paying premiums, waive a forfeiture, "or bind the company by making any promises, or making or receiving any representations or information."   Said paragraph of the policy contains this further clause:   "These powers can be exercised only by the president, vice-president, second vice-president, actuary or secretary of the company, and will not be delegated."   The letter written by Mr. Eames to the vice-president, shows previous communications between those persons had led the former to decide to discontinue payment on his two policies, including the one in suit (No. 652098), and that he did so with the understanding said policy would continue in force for $1,000 to November 7, 1908.   This letter called for an answer by appellant's vice-president; or at any rate an answer was given; not by the vice-president in person, but through Thompson, the cashier in St. Louis, clearly acting pursuant to authority delegated by the vice-president.   In the answer

Thompson said if the policy was not returned for indorsement of the full paid up value of reduced amount, within the time stipulated, it would be automatically carried as extended insurance for nine years and eleven months from December 7, 1898, a period which included December 17, 1905, when Mr. Eames died. We have seen the policy permitted certain officers, among whom were vice-presidents, to waive defaults and forfeitures and to bind the company by representations and information, but declared the power would not be delegated. In this instance power to impart information to the insured was delegated to the acting cashier in St. Louis; and hence said official was acting within the scope of his agency, and also within the terms of the policy, when he wrote the answer to Mr. Eames' letter. It follows said answer was competent evidence though not necessarily as an admission binding the company provided it tended to prove payment of the premium in question, which, if paid, extended the insurance beyond the date of Mr. Eames' death. Its tendency to prove this fact is apparent; for it stated the policy would be carried automatically as extended insurance for nine years and eleven months from December 7, 1898, which the company was not bound to do unless said premium had been paid prior to the date of the letter (Feb. 1, 1899), and would not have been promised by Thompson unless he believed it had been paid. But it is said Thompson merely took the payment for granted because of the tenor of Mr. Eames' letter to the vice-president. This might be argued to a jury, but it was a fair inference that, as Perkins had referred Eames' letter to Thompson to answer, he had also furnished Thompson with information needed to answer it correctly; especially as appellant undertook to prove by its cancellation clerk in the comptroller's department of the home office in New York, that the only data in the company's possession from which to ascertain whether or not the

premium had been paid, was at the New York office. We hold there was no error in admitting Thompson's letter.

2. The next error assigned is the admission of the testimony of Mrs. Tollman, Thompson's stenographer, which testimony tended to prove Thompson wrote Eames advisedly his policy would be carried for nine years and eleven months, and with a book before him from which he could learn whether or not the policy had lapsed. All that was proved by Mrs. Tollman when she was put on the stand in chief, were the duties of Thompson as acting cashier. The other testimony sought to be elicited from her regarding his custom of examining books at the time he wrote letters to policy holders about renewal premiums, was either excluded before she answered or struck out afterward. After Campbell's testimony had been introduced by appellant, to prove its custom of preserving memorandums of what premiums had been paid and what policies had lapsed for non-payment, Mrs. Tollman was again called to the stand and permitted to testify Thompson had access to entries on a renewal register kept in St. Louis, which showed payments of premiums and lapses of policies in the St. Louis district of appellant's operations. Campbell testified touching these matters from card registers kept in the New York office, and swore cards were kept on which were entered the dates when policies were written, premiums fell due, and lapses occurred. He testified the entries on the card relating to the Eames policy showed it was issued December 7, 1894, lapsed for non-payment of a premium on December 7, 1897, and was cancelled January 17, 1898; that from fifteen to forty-five days before premiums fell due, receipts were sent from the home office to the proper district agents, to be delivered to the policy holders when they paid premiums; that it was

the duty of the official in charge of the district office to surrender the receipt to the policy holder if he paid the premium, if it was not paid, the duty was to return the receipt to the home office, where it would be cancelled and the policy marked on the card record as lapsed for non-payment of premium. The witness Watts testified he was cashier in appellant's St. Louis office, where a card system prevailed similar to the one used in the home office, and, in effect, the same; that he had examined the card records in the St. Louis office and could find no record of the policy in suit. Mrs. Tollman testified in rebuttal that, when Thompson was acting as cashier in St. Louis, and during the nine years she was stenographer in the office, a book known as a renewal register was kept, in which renewal receipts were entered when they were received from the home office; and if default in payment occurred after thirty days' grace, the policy would be marked cancelled or lapsed. She said this renewal book was kept in addition to the card system; that it was the assistant cashier's duty to see the proper entries were made in it; and, further, that when he dictated letters about policies, it was his custom to have this renewal register before him to learn from it the status of the particular policy which happened to be the subject of his communication. It will be perceived the effort of appellant was to prove the policy in suit was not shown to be in force by the card system of the St. Louis or of the home office, and that these systems were the only data touching the matter; the object being to prove Thompson had no reason to believe from such data as he had access to when he wrote the letter to Eames in February, 1899, that the premium due December 7, 1897, had been paid, or that the policy would be extended, as he said, for nine years and eleven months. Appellant's proof of what the cards showed weakened the force of his letter as evidence tending to prove said premium had been paid.

Mrs. Tollman's testimony had a contrary tendency and went toward proving he had access to a book which would show the facts. We hold it was competent.

3. No error occurred in refusing to permit Watts to state why there was not a full record of old policies in the St. Louis office. This witness had only been in charge of the office since November, 1907, and was not likely to know why no full record of policies was kept during Thompson's incumbency years before. Appellant refused to examine him on the *voir dire* when the court gave leave in order to ascertain whether he had means of knowledge on the subject and could testify to facts instead of an opinion.

4. It is insisted the court committed error in refusing the instruction we have mentioned. The issues did not involve the question of Thompson's power to waive payments of premiums or set aside lapses. Appellant says in its brief no question of waiver or estoppel is in the case. Hence there was no reason why the court should give an instruction against Thompson's power to waive defaults or lapses. The jury were informed in several instructions that the only issue of fact was whether or not the premium due November 7, 1897, had been paid. Treating the instruction in question as an abstraction, its soundness is questionable. It is true the policy precluded Thompson in his capacity of cashier, from waiving anything or binding the company by statements; but in writing to Eames, he had a specially delegated power from the vice-president, who could waive defaults or authorize Thompson to do so for him. Mr. Eames had received a letter from Thompson purporting to answer the former's letter to the vice-president, which, in effect, asked the latter whether the policy would continue as extended insurance (an inquiry which turned on whether the premium of December 7, 1897, had been paid); and Thompson wrote Mr. Eames the policy would be extended; thereby

inducing him, if he did not remember the fact, to act on the assumption it had been paid. It is doubtful whether the company could take advantage of a mistake thus brought about; and certainly, as the issues stood, the court was not called on to instruct the jury to the contrary.

The judgment is affirmed. All concur.