MINNIE L. GORDON, PUBLIC ADMINISTRATOR OF THE ESTATE OF JOHN JUSS (SOMETIMES KNOWN AS JOHN JUSIS AND JOHN P. JUSS), DECEASED, APPELLANT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, RESPONDENT.—176 S. W. (2d) 506.

Kansas City Court of Appeals. November 8, 1943.

*Groves & Watkins, Fred M. Wanger* and *O. W. Watkins, Jr.,* for appellant.

48

*John C. Landis, III,* and *Paul S. Schmid* for respondent.

*Harry Cole Bates* and *Landis & Landis* of counsel.

### On Rehearing.

BLAND, J.—This is an action on a policy of life insurance. This appeal involves the question of the propriety of the action of the trial court in refusing to set aside an involuntary nonsuit taken by the plaintiff.

The facts show that in 1926 defendant issued a policy of group life insurance covering certain employees of Armour & Company; that in 1931 one John P. Juss, an employee of said company, made application to come within the coverage of said policy, and received a certificate for $1200 reciting to the effect that he was insured under said policy in that amount. In said certificate, Emma Juss, mother of the insured, living in Russia, was named as the beneficiary. John Juss died on May 22, 1940, while still an employee of Armour & Company, and the plaintiff was appointed administratrix of his estate. Her claim for the payment of the amount of the certificate being denied by the defendant, she brought this suit on the policy for the sum of $1200.

The group policy provided: "In the event of the death of any beneficiary, prior to that of the Employee, the interest of such Beneficiary shall vest in the Employee, by whom he was designated. If there be no designated Beneficiary at the time when any insurance hereunder shall be payable to the Beneficiary, then such insurance shall be payable as follows: To the wife, or husband, if living, of such Employee; if not living, to the children of such Employee who survive such Employee, equally; if none survive, to the father and mother of such Employee equally, or to the survivor; if neither survive such Employee, to the estate of such Employee."

The petition alleges that Emma Juss departed this life before the insured; that he was not survived by a widow nor descendants nor brothers nor sisters, nor any heirs-at-law.

For the purpose of proving that insured's mother, who never left Russia, the designated beneficiary, was dead; that his father was dead; that he had never been married and that he had left no children, evidence was offered, on the part of the plaintiff, to the effect, that insured, in his lifetime, made certain declarations to the effect that his mother and father were dead; that he had never been married and that he had no children. The court refused to permit the introduction of this testimony. This is assigned as error by plaintiff.

Plaintiff concedes that this testimony was hearsay but insists that it comes within one of the exceptions to the hearsay rule, it being

evidence of pedigree. Plaintiff insists that the proffered evidence meets the three elements necessary to satisfy the pedigree exception. "(1) That declarant be related by blood or marriage to the person of whom he speaks; (2) That the statements were made *ante litem motem* or before there was a motive to falsify; (3) That the declarant is dead, or otherwise unavailable."

Defendant admits that these are necessary elements in pedigree cases, but states that these are not the only elements that must be present; that it is also necessary to show that pedigree is directly in issue and not merely related to the issue; that pedigree is not directly in issue in this case.

There is conflict in the authorities in reference to this matter. Some of the courts hold that a case is not necessarily one of pedigree because it involves questions of birth, death, parentage, age, or relationship; that where these questions are incidental, and the judgment will simply establish a debt or a liability on a contract, etc., the case is not one of pedigree; that genealogy or descent must be the direct subject of the suit or the main issue in order to make the evidence admissible.

Other cases hold that the evidence is admissible even though the suit involved pedigree only indirectly, but in such cases, the facts sought to be established must be required to be proved for some genealogical purpose.

Other courts take a broad view of the matter and permit the introduction of such testimony on issues wherein the facts may be entirely disassociated from the question of pedigree, that is, where pedigree is only related to the main issue. [See 3 Jones Commentaries on Evidence (2 Ed.), pp. 2102-2107; 5 Wigmore on Evidence (3 Ed.), pp. 324, 325, 326; Pickering v. Peskin (Ohio), 183 N. E. 301.]

The main controversy between the parties in this case is as to what view of the matter had been taken by the courts of this State. The case was tried below by the plaintiff upon the theory that the policy provision relating to the beneficiary means that, upon the death of the named beneficiary before the employee, upon the failure of the employee to name another beneficiary, the insurance should go to the surviving spouse, children or parents. In other words, that the insurance should not go to the estate of the employee unless there be no surviving spouse, child or children. The case was not tried upon the theory that the policy is to be construed as providing merely that, if there be no designated beneficiary by the insured employee at the time the insurance was taken out, the insurance should go to the estate of the employee, and not to the surviving spouse, children or parents of the insured, if any. Plaintiff claims that the latter theory is more beneficial to her but, in deciding the case, we will assume that the policy is to be construed in accordance with the theory of plaintiff in the trial court. [James v. Casualty Co., 113 Mo. 622.]

We are of the opinion that the issue of pedigree is not directly or indirectly present herein, in the sense that genealogy or inheritance is involved. It is not disputed that the excluded testimony is related to the issue, and there is no question that this is true.

There are but few cases on the subject in this State, but from an examination of those before our Supreme Court, we are forced to conclude that the broad view of the matter is the one adopted in this State. In Rauch v. Metz, 212 S. W. 357, 362, the Supreme Court said: "The character of the litigation in which the evidence is offered is immaterial. It is the nature of the statement which determines its admissibility, and not the character of the litigation in which it is offered. [1 Greenleaf on Evidence, p. 203.]" We construe this language to mean that such evidence is competent in other cases than genealogy or inheritance cases and not merely in any case, regardless of the character of the litigation, in which genealogy is involved. The court meant to make a distinction between the restricted rule and the one it was announcing, and our construction of the language used is made even more evident by the authority cited by the court in support of the statement. Turning to Greenleaf on Evidence, p. 203, we find the law is stated as follows:

"Kind of Litigation in which such Declarations are receivable. These facts, therefore, may be proved in the manner above mentioned, in all cases where they occur incidentally, and in relation to pedigree, i. e., only in litigation where the issue upon which the evidence is offered involves a question of descent, 'from what parents the child has derived its birth,'—chiefly, therefore, inheritance cases. That, at least, was the original English practise, since confirmed and followed in that country, as well as in some American jurisdictions. But, as a matter of principle, it is difficult to see how this arbitrary limitation can be supported. If a statement of the present sort is to be regarded as sufficiently trustworthy, at the time of making it, to be worth considering in evidence, it must be equally trustworthy whether, by the turn of chance, the litigation in which it subsequently becomes useful is an action of ejectment for land, or a plea of infancy to a promissory note, or a suit for the amount of a life-insurance policy, or a prosecution for rape upon one under the age of consent, or any other kind of proceeding, civil or criminal. 'If this evidence is admissible to prove such facts at all, it is equally so in all cases where they become legitimate subjects of judicial inquiry and investigation.' Accordingly, such as the view now taken in the majority of American jurisdictions."

In State v. Bowman, 213 S. W. 64, 67, the Supreme Court stated: "Some jurisdictions refuse to admit hearsay declarations of this sort, in any case, except a pedigree case. [Cf. People v. Mayne, 118 Cal. 516, 50 Pac. 654, 62 Am. St. Rep. 256; 1 Greenleaf on Ev. (16 Ed.), p. 203, note.] But such a rule has never secured a foothold in this

State (State v. Marshall, 137 Mo. 463, 36 S. W. 619; 39 S. W. 63), and no sufficient reason for so restricting the admissibility of such evidence within such narrow limits can be seen. [22 R. C. L. 1201; 1 Greenleaf on Ev. (16 Ed.), 203.]'' It will be noted that the Supreme Court again cites Greenleaf on Evidence.

The case of Osmak v. Am. Car & Foundry Co., 40 S. W. (2d) 714, was a suit to recover the statutory penalty for the wrongful death of one John Osmak, which plaintiff alleged ·was caused by the negligence of the defendant. The suit was brought by Elizabeth Osmak, who claimed to be the wife of the deceased. Defendant filed a plea in abatement alleging that plaintiff was not the widow of the deceased. In the trial of the plea it was admitted that a marriage ceremony had been solemnized between deceased and the plaintiff, but defendant claimed that deceased was, at that time, married to another woman. Defenant's witness, Kate Haag, testified that she was the daughter of deceased and that her deceased mother and her father during their lifetime had stated· in her presence that they were not married and that her father had never been divorced from his wife in the old country. It appears that deceased had married a woman in the old country and also plaintiff in this country and had lived with a third woman— the mother of the witness—in the old country and in this ·country.

The. Supreme Court held that this declaration was competent, stating, 1. c. 717, 718: ''The testimony of the witness Haag to the effect that her father, John Osmak and her mother, Mary Kramer, had stated in her presence that they were not married, and that he had never been divorced from his wife in the old country, was objected to by appellant at the time of its reception on· the ground that it was hearsay, and the point is pressed here. The declarations concerned matters of family history; they were made *ante litem motem*; and the declarants were dead. The statements fall within a well-established exception to the hearsay rule and were clearly admissible.''

It is quite apparent that, in the Osmak case the question of pedigree was not directly or indirectly involved, although the particular branch of the case under consideration was the plea in abatement. The evidence was merely related to the main issue, yet, the Supreme Court held the testimony competent.

The Osmak case cannot be distinguished on the ground that the plaintiff's rights in that case, in some degree, came through her husband. Of course, this could not be. Her rights were created by Statute. The husband could not have had any right in the matter prior to his death, as the cause of action arose from his death.

It is also contended that: ''The court in its opinion (in the Osmak case) seemingly held, without discussion, that the statements were admissible under the pedigree rule and, of course, since the point was not presented to it, it did not in any way discuss or rule upon

whether or not it was necessary for pedigree to be in issue in the case.''

The decision of the court was that the evidence was admissible. The question of whether it was necessary for pedigree to be in issue inhered in the case and it is an authority notwithstanding the court did not discuss every detail of the rule or exhaustively review the law in reference to the matter. [15 C. J., p. 942.] If it be the fact that the question of whether it is necessary for pedigree to be in issue in the case, was not presented to the court, and the court did not give that question a thorough consideration, it is one that might well be addressed to the Supreme Court in an effort to have it overrule that case, but not a question for us, as we are required by the constitution to follow the decisions of the Supreme Court, whether made after a thorough consideration of the issues involved. [State ex rel. Weisheyer v. Haid, 26 S. W. (2d) 939.]

There are two cases in this State by this court which seem to uphold defendant's contention. [See Pickett v. Sexton, 193 Mo. App. 519; Bailey v. Metropolitan Life Ins. Co., 115 S. W. (2d) 151.] The opinion in the latter case was quashed by the Supreme Court on other grounds than the one here involved. [See State ex rel. v. Metropolitan Life Ins. Co., 121 S. W. (2d) 789.]

Deeming the cases in this court out of harmony with those of the Supreme Court, our cases should no longer be followed.

However, defendant insists that the evidence was inadmissible because there was no affirmative showing that declarant had proper knowledge of the facts upon which his declarations were based.

Plaintiff contends that it was not necessary to show that declarant had knowledge of such facts.

Plaintiff's contention would be well taken if the declarations in question were as to family history, reputation or tradition. If family history is involved the declarations concerning such history, of one connected with the family, are admissible, notwithstanding that declarant did not disclose the source from which he derived his information and the fact that they might amount to hearsay upon hearsay, and may even be without a traceable authoritative source, would not render the declarations incompetent. [20 Am. Jur. pp. 411, 412; 31 C. J. S., p. 982; 22 C. J., pp. 248, 249, 250; 2 Taylor on Evidence (9 Ed.), p. 415; Wharton on Evidence (3 Ed.), p. 191; Monkton v. Attorney-General, 39 Eng. Rep. 350, (full print); Jewell's Lessee v. Jewell, 1 Howard, 219; Pancoast's Lessee v. Addison (Md.), 2 Am. Dec. 520; Grand Lodge v. Bartes (Nebr.), 98 N. W. 715.]

The testimony of Mary Zembles, the introduction of which the court refused to permit, is as follows:

"Q. Tell the jury just as nearly as you can, just the words, the exact words as nearly as you can that Mr. Juss said to you. A. Yes, he said to me.

"Q. What did he say? . . . A. He said his mother was gone in the letter.

"Q. I didn't hear you . . . A. He gets a letter his mother is gone, dead. That is all I know.

"Q. I didn't ask you about the letter. I want you to just tell the jury what Mr. Juss said to you about his mother or her death. . . '. A. Well, that is what he said."

The testimony of Joseph Zembles, husband of Mary Zembles, the introduction of which the court refused to permit is as follows:

"Q. Did he tell you anything about his father, make any statement to you as to whether his father was living or dead? . . . A. He said he was and his mother died several years later.

"Q. He told you his father was dead? . . . A. Yes. . . .

"A. I cannot tell you exactly but several years after the mother died. He told me now he had lost both daddy and mother.

"Q. Did he tell you his mother had died? . . . A. Had died first, his father, and his mother had died afterwards.

"Q. About when did he tell you that his mother had died? . . . A. It was after '31, something like that."

It will be seen that the nature of declarant's statements was not that of family history, but merely statements of a fact, or facts, that is, that his mother was dead; that his mother died after his father. Under such circumstances, it must appear that declarant would have been qualified to testify as a witness, and that he had actual knowledge of the facts stated by him or such an opportunity of acquiring such knowledge as to raise a reasonable inference that he possessed such knowledge. [31 C. J., pp. 974, 975; 22 C. J., p. 246; Rothwell v. Jamison, 147 Mo. 601; Smith v. Lynn, 152 S. W. (2d) 838; In re Frey's Est. (Ia.), 224 N. W. 597; Scheidegger v. Terrell (Ala.), 43 So. 26; Vantine v. Butler, 240 Mo. 521; Jewell's Lessee v. Jewell, *supra*.]

We are of the opinion that, ordinarily, where the relationship between declarant and the person of whom he speaks is that of son and mother, there would be a reasonable inference that he possessed actual knowledge of facts, such as those involved herein, stated by him. However, the proffered evidence raises a serious doubt as to whether the son in this case had such knowledge, if it does not show to the contrary. The information he received of his mother's death was through a letter. Who wrote the letter, or the contents of the letter, other than the statement that his mother was dead, is not shown in the evidence. Statements contained in documents, such as letters, relating to pedigree, are sometimes admissible, bu it must appear "That the writing was made by, or under the direction of, a competent declar-

ant, or that it was acknowledged by a competent declarant as a correct family memorial, except where it is in the form of an entry in a family Bible or testament which is produced from the proper custody, in which the assent of the family is presumed.'' [22 C. J., p. 253. See, also, In Re Paulsen's Est. (Calif.), 178 Pac. 143; Monkton v. Attorney-General, *supra*.]

It is apparent that if the letter, itself, had been offered in evidence, without any showing, to say the least, from whom it was received, it would not have been competent and we think that the evidence of the declarations of the declarant, based upon the letter, without showing more than that he merely received a letter (apparently from Russia) stating that his mother was dead, amounted to nothing more than hearsay. The declarant, himself, under the circumstances, would not have been in a position to testify to the fact of the death.

Plaintiff contends that the letter was not the only information that declarant had of his mother's death; that there was other testimony than that of Mary Zembles that he made stattments that is mother was dead.

The evidence of Mary Zembles shows from what source he received his information. There is nothing in the testimony of Joseph Zembles, in any way contradicting that of Mary Zembles, that declarant received his information from the letter.

The judgment is affirmed. All concur.