L. A. BARNHART, Fred A. Woody, Johnie Barnhart, Luther Ricker and John Champlain, Trustees of Mount Etna Christian Church, Plaintiffs-Respondents,

v.

W. H. RIPKA, Defendant-Appellant.

No. 7519.

Springfield Court of Appeals. Missouri.

Dec. 27, 1956.

Not to be published in State Reports.

Harry II. Kay, Jack L. Miller, Eldon, for defendant-appellant.

Harold Hutchinson, Vienna, Breuer & Northern, Rolla, for plaintiffs-respondents.

STONE, Judge.

In their "Petition for Injunction," plaintiffs averred that, as trustees of Mount Etna Christian Church (hereinafter referred to as the church), they had custody and control of "the church property (which) consists of * real estate located in (rural) Maries County, Missouri as evidenced by a certain deed recorded in Book 35, page 350, * * * and a certain deed recorded in Book 38, page 339, Deed Records of Maries County, Missouri, copies of which are hereto attached and made a part hereof," and "that the defendant has committed trespass on the above property on numerous occasions by plowing up the ground on the property of the plaintiffs." The decree, from which defendant appeals, permanently enjoined him "from trespassing upon lands described in petition and in evidence as church ground."

By deed dated November 28, 1914, and recorded in Book 35 at page 350, Rudolph and Anna Ripka, as grantors, conveyed to the then "deacons" of the church "and their successors in office," as grantees, the tract within an involved metes and bounds description shown marginally,[1] "Less about 2 acres as reserved in a former deed made by J. H. Wiles and wife, dated 29th day of December 1913, for school purposes." The Ripka deed recited that the tract conveyed to the church (which *excluded* the two acres reserved "for school purposes") contained "¾ *acres more or less*," but the only two witnesses on this subject testified that the total area within the metes and bounds description (which *included* the reserved two acres) was "*approximately nine acres*" or "*something like eight or nine acres.*" We hereinafter refer to the total area within the metes and bounds description in the Ripka deed (which *includes* the reserved two acres) as "the larger Ripka tract," to that portion of the larger Ripka tract conveyed to the church (which *excludes* the reserved two acres) as "the Ripka-church property," and to the "2 acres * reserved in a former deed by J. H. Wiles and wife,

---

1. "Beginning 4 chains West of the S.E. corner of the S.E. qr. of the NE 1/4 of Section 8 in township 40 of Range 11, West, thence West on the line 12 chains to a flint rock 6 x 6', thence Northwest along the meanderings of the County road 9 chains and 9 links to a flint rock 10 x 10' thence NE 2 chains and 19 links to a black walnut tree, 12 in. in diameter, thence South East 13 chains and 27 links to a flint rock 4 x 8', thence South 4 chains and 29 links to the place of beginning Less about 2 acres as reserved in a former deed made by J. H. Wiles and wife, dated 29th day of December 1913, for school purposes, for the use and benefit of the above named Church, containing 3/4 acres more or less."

dated 29th day of December 1913, for school purposes" as "the reserved 2-acre tract."

By the deed dated April 11, 1916, and recorded in Book 38 at page 339, J. R. and Fannie Pendleton, as grantors, conveyed to the then named "trustees" of the church "and their successors in office," a rectangular tract (hereinafter referred to as the Pendleton tract) 28 yards, east and west, and 22 yards, north and south. The *south* boundary of the larger *Ripka* tract is the half-section line, while the same half-section line is the *north* boundary of the contiguous *Pendleton* tract. The front of the church house, erected on the Pendleton tract in 1916, faces north and is about three feet south of the half-section line. Some thirty to thirty-five yards "north of the east half of the church," there is a country school house, fronting toward the west, which *presumably* stands on the reserved 2-acre tract. (We thus qualify our references to the reserved 2-acre tract because, as hereinafter emphasized, the record nowhere discloses the location or boundaries of the reserved 2-acre tract, other than that it is within, and is a part of, the larger Ripka tract.) When pupils "moved to the new school" at a different location about the first of 1955, this country school house was closed. The church "decided to buy it (the school house) * and use it for a Sunday School room," but for some reason, here neither disclosed nor material, the school district conveyed the "school house with a half acre of ground" to *defendant* and presumably the remainder of the reserved 2-acre tract, including a country cemetery, to Maries County.

Vehicular access to the church, school house and cemetery is over a "private road," which enters the southwest portion of the larger Ripka tract and, curving in a northeasterly direction, runs north of the school house. Since construction of the present church house in 1916, the areaway in front (and thus north) of the church house and in front (and thus west) of the school house has been used by church members and attendants, in earlier days as "a hitching ground" and in later years for the parking of motor vehicles; and, throughout the same period (until the school house was closed early in 1955), the same areaway has been used as a school playground. At least a portion of this areaway has been graveled by the church on several occasions during the past thirty years, and from time to time the remainder of the areaway has been mowed, usually by the church but occasionally by the school district.

On April 28 or 29, 1955, which was subsequent to conveyance to him of the "school house with a half acre of ground," defendant plowed a strip of ground directly in front of, and "about ten feet" from, the church house thus impeding and interfering with entrance into this house of worship. Since defendant (a former trustee of the church) offered no evidence, his purpose in plowing this strip, "approximately two hundred feet" long, east and west, and "about eight steps wide," north and south, *which was not "a part of a general plowing around there,"* and his zeal in again plowing this strip the same evening after it had been leveled by church members in the morning and in repeatedly plowing the same strip "four different times" before this action was instituted on May 7, 1955, remain wholly unexplained. However, defendant's motives, although suspect, are not determinative of this appeal.

■ Since injured or violated *possession* is the gist or essence of an action bottomed on alleged trespass to real estate,[2] as is the instant case, such action may be maintained only where plaintiff was in possession of the real estate at the time of the al-

2. More v. Perry, 61 Mo. 174, 175; Cox v. Barker, 81 Mo.App. 181, 183; 87 C.J.S., Trespass, § 22a, p. 972; 52 Am. Jur., Trespass, Section 11, p. 843; Tiffany on Real Property (3rd Ed.), Vol. 1, Section 174, loc. cit. 278.

leged trespass.[3] *Actual* occupancy not being essential, *constructive* possession will suffice;[4] and, when real estate is not actually possessed or occupied by another, legal title is said to annex or draw to it such constructive possession.[5] In the case at bar, plaintiff's petition contains no express allegation as to *possession* of the real estate on which defendant was alleged to have trespassed "by plowing up the ground"; but, since the petition plainly imports *ownership* of such land, it must be construed as predicated on the theory that plaintiffs had legal title to the plowed strip and thus had *constructive* possession of it.[6] So relying on constructive possession, plaintiffs were required to adduce evidence of legal title in themselves to the land on which the trespass was alleged to have occurred. Holliday-Klotz Land & Lumber Co. v. Markham, 96 Mo.App. 51, 75 S.W. 1121; Riffel v. Ozark Land & Lumber Co., 81 Mo.App. 177, 179.

■■ The instant appeal properly might be ruled on defendant's assignment that plaintiffs wholly failed to prove any title in themselves. For, the purported copies of the Ripka and Pendleton deeds, which were attached to and became a part of plaintiffs' petition [Section 509.130, RSMo 1949, V.A. M.S.], did not prove themselves;[7] and, although the record of the Ripka deed was *identified* as an exhibit and plaintiffs' counsel read the legal description contained therein, the exhibit was *not offered in evidence*. But, again recognizing that "our primary duty is to litigants rather than to counsel who represent them" [Ambrose v. M. F. A. Co-operative Ass'n of St. Elizabeth, Mo., 266 S.W.2d 647, 650; Songer v. Brittain, Mo.App., 272 S.W.2d 16, 18] and preferring to rest our determination of this appeal on its substantial merits, we have assumed, for the purposes of this opinion, that plaintiffs established legal title in themselves to the Ripka-church property.

■ So assuming, we are confronted with the more serious question as to whether the plowed strip, although obviously within the larger Ripka tract, was located within the Ripka-church property, i. e., within that portion of the larger Ripka tract conveyed to the church after exclusion of "about 2 acres as reserved in a former deed made by J. H. Wiles and wife, dated 29th day of December 1913, for school purposes." Certain questions and answers *indicate* (without definitely establishing) that the Wiles deed, which presumably described the reserved 2-acre tract, is available, but the transcript on appeal neither includes the Wiles deed nor accounts for its absence nor reflects the description therein. Witness Branson, County Surveyor of Maries County, not only surveyed the larger Ripka tract

3. Brown v. Hartzell, 87 Mo. 564, 568(1); Lindenbower v. Bentley, 86 Mo. 515, 519(2); Whitener v. Ward, Mo.App., 242 S.W. 991, 992(1); Hampton v. Massey, 53 Mo.App. 501, 502–503(1); Missouri Lumber & Mining Co. v. Zeitinger, 45 Mo.App. 114, 122(3).

4. Allen v. Wehrman, Mo.App., 204 S.W.2d 464, 467(6, 7); Hammontree v. Huber, 39 Mo.App. 326, 329.

5. Brown v. Hartzell, supra, 87 Mo. loc. cit. 568(2); Crenshaw v. Ullman, 113 Mo. 633, 20 S.W. 1077, 1079; Wright v. Nickey, Mo.App., 182 S.W. 1085(2); Hurt v. Adams, 86 Mo.App. 73, 82(5); Holladay-Klotz Land & Lumber Co. v. T. J. Moss Tie Co., 79 Mo.App. 543, 546.

6. Renshaw v. Lloyd, 50 Mo. 368; Eastin v. Joyce, 85 Mo.App. 433, 436; Holladay-Klotz Land & Lumber Co. v. T. J.

Moss Tie Co., supra, 79 Mo.App. loc. cit. 546(1); Bell v. Clark, 30 Mo.App. 224, 230(1). Compare Hammontree v. Huber, supra, 39 Mo.App. loc. cit. 328–329.

7. Consult School Dist. No. 80 of Christian County v. School Dist. No. R–1 of Christian County, Mo.App., 258 S.W.2d 258, 259(1); Rust Sash & Door Co. v. Bryant, Mo.App., 124 S.W.2d 544, 547(4). See also State v. Hurst, Mo., 280 S.W.2d 115, 118; State v. Skaggs, Mo., 248 S.W.2d 635, 637(5); Hardwick v. Kansas City Gas Co., 352 Mo. 986, 180 S.W.2d 670, 672(1); Hurst Automatic Switch & Signal Co. v. Trust Co. of St. Louis County, Mo., 5 S.W.2d 3, 4(3); Bullock v. B. R. Electric Supply Co., 227 Mo.App. 1010, 60 S.W.2d 733, 735(6); Orlando v. Surwald, Mo.App., 47 S.W.2d 228, 229(5).

but also surveyed and "wrote a description for the deed" to the "half-acre" (presumably a portion of the reserved 2-acre tract) which, with the school house, the school district conveyed to defendant within "a year or two" prior to institution of this action. However, no survey or plat by witness Branson was offered upon trial; the description which he wrote for the deed by which the "school house with a half acre of ground" was conveyed to defendant was neither sought nor obtained; and, neither of the recent deeds by the school district, i. e., the deeds to defendant and to Maries County, which presumably conveyed in the aggregate all of the reserved 2-acre tract, was produced or offered. Witness Branson frankly admitted that "it would be a mere guess" as to the acreage in the areaway in front (and thus north) of the church house and in front (and thus west) of the school house, a portion of which was plowed by defendant; and, witness Renfrow, the only other witness interrogated as to the acreage in such areaway, thought it contained "not maybe more than three-quarters of an acre, or something—I just wouldn't know."

 Confused and confusing as the foregoing factual statement may be, it is no more so than the record before us, from which it is utterly impossible to determine whether the land on which defendant is charged with having trespassed, i. e., the plowed strip, is within the Ripka-church property, i. e., that portion of the larger Ripka tract conveyed to the church in 1914, or is within the *wholly-undefined* boundaries of the reserved 2-acre tract, to which the church (insofar as we are advised) neither has nor claims any right, title or interest. We have not overlooked the question to plaintiff Woody as to "whether or not this land you see in front of the church house (as shown in a small kodak picture) * * is part of the land that is described in the (Ripka) deed" and Woody's answer, *over defendant's objection,* "it is." However, not every human assertion is to be accepted as the basis of an inference that the thing asserted is true. Wigmore on Evidence (3rd Ed.), Vol. II, Section 475, loc. cit. 516. And, it would seem to be elementary and self-evident that no witness should be heard with respect to that concerning which he does not possess the fundamental and basic testimonial qualification of knowledge;[8] or, as succinctly stated many years ago, "(n)o one can be allowed to prove what he has never learned, whether it be ordinary or scientific facts." Elliott v. Van Buren, 33 Mich. 49, 53. So, when the testimony of a witness, read as a whole, *conclusively* demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part and that, in fact, he did not know about that concerning which he undertook to speak, his testimony on such issue cannot be regarded as having any probative value.[9]

 When plaintiff Woody was asked "do you know where the corners of this (Ripka) property are located," he said "well, I don't know exactly on the one, but —and I know where the southeast corner of the forty is that this land came off of"; and, to the next inquiry as to whether "that corner (was) established by a survey," he responded "well, I don't know if it is estab-

8. Wigmore on Evidence (3rd Ed.), Vol. II, Sec. 478, p. 518; Ibid., Sec. 654, loc. cit. 758; Ibid., Sec. 656, p. 762; Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600, 606(4); Cole v. Uhlmann Grain Co., 340 Mo. 277, 100 S.W.2d 311, 321(9). Consult also Farber v. Missouri Pac. Ry. Co., 116 Mo. 81, 22 S.W. 631, 634(4), 20 L.R.A. 350; Martin v. Kansas City, Mo.App., 224 S.W. 141, 142(5); Eames v. New York Life Ins. Co., 134 Mo.App. 331, 114 S.W. 85, 87(3).

9. Van Bibber v. Swift & Co., 286 Mo. 317, 337, 228 S.W. 69, 76(9); Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 729, 81 S.W.2d 313, 315; Armstrong v. Croy, Mo.App., 176 S.W.2d 852, 853(1, 2); Gordon v. Metropolitan Life Ins. Co., 238 Mo.App. 46, 176 S.W.2d 506, 510(8); Banty v. City of Sedalia, Mo.App., 120 S.W.2d 59, 61(1).

**792**

lished or not, but the corner—." Woody readily conceded that "I won't say that I'm familiar where the lines would be" if the Ripka property were surveyed, and he indicated no knowledge of the location of the reserved 2-acre tract or the "half-acre of ground" conveyed by the school district to defendant. Even the testimony of a surveyor as to the location of boundary lines is not to be received unless the data from which such lines are run is produced and proved.[10] A fortiori, the testimony of plaintiff Woody, admittedly uninformed as to the true location of boundary lines, does not supply the substantial evidence essential to support the decree for plaintiffs.

The remedy of injunction, frequently characterized as "the strong arm of equity," is a summary, transcendent and extraordinary remedy, may not be invoked as a matter of course, and should be exercised sparingly and only in clear cases;[11] and, on the vague, incomplete and unsatisfactory record before us, the injunctive decree clearly may not be sustained. Cf. Steele v. Allison, 228 Mo.App. 656, 73 S.W.2d 842, 843(1, 2); Latshaw v. Simpson, Mo.App., 162 S.W.2d 635. However, since it is as plainly apparent that all pertinent factual information was not presented upon trial, plaintiffs should not be foreclosed from an opportunity to establish upon retrial, if they can, their right to the injunctive relief sought. Kramer v. Johnson, 361 Mo. 1085, 238 S.W.2d 416, 423(13).

Accordingly, it is the judgment of this court that the judgment and decree of the circuit court entered on October 4, 1955, be set aside and for naught held, and that the cause be remanded to the circuit court for retrial, with leave to plaintiffs to amend their petition (if they so desire) to meet the substantial objections interposed by defendant as to its legal sufficiency.

McDOWELL, P. J., and RUARK, J., concur.

---

10. Cordell v. Sanders, 331 Mo. 84, 52 S.W. 2d 834, 839(7); Kelley v. Absher, Mo. App., 210 S.W.2d 531, 536(5); Pioneer Cooperage Co. v. Bland, 228 Mo.App. 994, 75 S.W.2d 431, 435(6). See also Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544, 547(7).

11. Sapp v. Garrett, Mo.App., 284 S.W.2d 49, 52(1); Ewing v. Kansas City, Mo.,

238 Mo.App. 266, 180 S.W.2d 234, 239 (2); Latshaw v. Simpson, Mo.App., 162 S.W.2d 635, 636; Prendergast v. Blomberg, Mo.App., 141 S.W.2d 156, 159(2); Godefroy Mfg. Co. v. Lady Lennox Co., Mo.App., 134 S.W.2d 140, 146(2); Steele v. Allison, 228 Mo.App. 656, 73 S.W.2d 842, 843(1, 2).